**Shobinder GILL, Petitioner,**

v.

**IMMIGRATION AND NATURALIZATION SERVICES, Respondent.**

**Docket No. 03–40612.**

United States Court of Appeals, Second Circuit.

Argued: April 18, 2005.

Decided: Aug. 18, 2005.

Charles L. Mester, New York, New York, for Petitioner Shobinder Gill.

Dale A. Goldberg, Assistant United States Attorney for the Southern District of Ohio, Dayton, Ohio (Gregory G. Lockhart, United States Attorney, on the brief)for Respondent Immigration and Naturalization Services.

Before: OAKES, JACOBS, and STRAUB, Circuit Judges.

Judge JACOBS dissents in a separate opinion.

STRAUB, Circuit Judge.

Petitioner Shobinder Gill petitions for review of a Board of Immigration Appeals ("BIA") opinion finding Gill removable based on a conviction of a "crime involving moral turpitude" ("CIMT") under 8 U.S.C. § 1227(a)(2)(A)(i). Gill argues that his crime of conviction, attempted reckless assault under New York Penal Law § 120.05(4), is not a CIMT because it requires only a reckless state of mind, whereas some positive intent is required for a CIMT. Gill does not specifically argue that his conviction for attempted reckless assault does not demonstrate the requisite mental state for a CIMT because it incoherently combines the specific intent element of criminal attempt under New York law with the recklessness standard of § 120.05(4). Nonetheless, we exercise our discretion to consider this subsidiary issue *sua sponte* and find that the BIA committed clear error in ordering Gill's removal based on a crime that, because it is legally impossible, demonstrates no clear mental state.

The legal incoherence of Gill's crime of conviction was not argued in the administrative proceedings below. However, this argument is subsidiary to the general argument Gill *did* make before the BIA: that his crime of conviction did not reflect a sufficiently culpable mental state to be designated a CIMT. Therefore, we hold that our basis for reversing the BIA's decision is not precluded by the exhaustion requirement for immigration appeals, 8 U.S.C. § 1252(d)(1), which provides that "[a] court may review a final order of removal only if ... (1) the alien has exhausted all administrative remedies available to the alien as of right," or by any judicial exhaustion doctrine. Accordingly, we reverse the BIA's order of removal, and remand with instructions to close Gill's removal proceedings.

## BACKGROUND

Gill, whose father is a United States citizen, was admitted to the United States as a visitor in 1989, at age nine, and later granted lawful permanent resident status in 1994. On June 24, 1999, Gill pleaded guilty to attempted assault in the second degree in violation of New York Penal Law ("N.Y.P.L.") § 120.05(4), which proscribes "recklessly caus[ing] serious physical injury to another person by means of a deadly weapon or a dangerous instrument."[1] He was sentenced to nine months' imprisonment. On August 12, 1999, the Immigration and Naturalization Service ("INS")[2] filed a notice to appear, charging Gill as removable based on his attempted assault conviction, which the INS characterized as a CIMT.[3] Gill argued

---

1. While the dissent is correct that Gill originally pled guilty to attempted *intentional* assault, his conviction for this offense was subsequently amended by the trial court, for reasons that are unexplained in the record, to reflect the less culpable mental state of recklessness.

2. As of March 1, 2003, the INS has been reorganized as the Bureau of Immigration and Customs Enforcement under the Department of Homeland Security. Because the

rulings under review were made while the agency was still the INS, we refer to it as the INS in this opinion to avoid confusion.

3. The INS later added the charge that Gill was also removable based on his conviction for theft of government services, a misdemeanor, which resulted from Gill's illegal use of his sister's student subway pass. However, this conviction was subsequently reduced to disorderly conduct, a violation, and was not

that his crime was not a CIMT because § 120.05(4) requires only a reckless state of mind, whereas some positive intent is required for a CIMT.

The IJ agreed with Gill in a decision dated October 11, 2000, then reversed himself on February 1, 2002, after the INS moved for reconsideration. In his later order, the IJ found that, under New York law, reckless conduct involves a conscious disregard of "a substantial and unjustifiable risk" of harm, and that this disregard can, in certain circumstances, constitute a sufficiently culpable mental state to render the offense a CIMT. The BIA affirmed by a decision issued September 2, 2003, holding that, although not all crimes of recklessness constitute CIMTs, Gill's crime did so because it involved two aggravating factors: the serious physical injury which resulted from Gill's conduct and his use of a deadly weapon. Although neither the BIA nor the IJ found any significance in the fact that Gill's conviction was for *attempted* assault, both noted this fact in their opinions.

This appeal followed.

## DISCUSSION

### I. Jurisdiction

Because the specific argument on the merits which we discuss in Section III *infra* was not raised before the BIA, we must decide at the outset whether we have jurisdiction to consider it.

Section 1252(d)(1) of Title 8 of the United States Code provides, in pertinent part, that federal courts "may review a final order of removal only if ... the alien has exhausted all administrative remedies available to the alien as of right." While there is no question that this exhaustion requirement, being statutory, is mandatory, a question does arise as to the level of specificity at which a claim must have been made to have been "exhausted" under § 1252(d)(1).

Various decisions by this Court have spoken to this question obliquely. In *Beharry v. Ashcroft*, for example, we held that the District Court had lacked jurisdiction under § 1252(d)(1) to consider Beharry's claim for relief under 8 U.S.C. § 1182(h) (" § 212(h) relief")[4] because he had not previously sought § 212(h) relief from the INS. 329 F.3d 51, 62 (2d Cir. 2003). Because *Beharry* involved a habeas petition and the law was unclear as to whether § 1252(d)(1) applies to such,[5] we also considered whether the "less stringent" judicial exhaustion requirement prevented the consideration of Beharry's § 212(h) claim. We found that it did, in part because Beharry's failure to claim § 212(h) relief below "left sizable gaps in the factual record presented to us on appeal" such that this Court would be "hard-pressed" to decide the merits of his legal claim. *Id.* at 62; *see also Theodoropoulos v. INS (Theodoropoulos II)*, 358 F.3d 162, 165–69, 174 (2d Cir.2004) (holding that § 1252(d)(1) barred habeas review where petitioner, in open court, had expressly waived his right to appeal the IJ's decision), *cert. denied*, —— U.S. ——, 125 S.Ct. 37, 160 L.Ed.2d 34 (2004). Similarly, we held in *Foster v. INS* that, under § 1252(d)(1), an alien's "generalized protestations that his removal was improper"

---

cited as a basis for the final order of removal entered against him.

**4.** Section 1182(h) is the codification of § 212(h) of the Immigration and Nationality Act of 1952, as amended.

**5.** We subsequently found § 1252(d)(1) applicable to habeas review in *Theodoropoulos v. INS*, 358 F.3d 162, 171 (2d Cir.), *cert. denied*, —— U.S. ——, 125 S.Ct. 37, 160 L.Ed.2d 34 (2004).

did not allow him to argue on appeal that his crime of conviction (first degree manslaughter) was not a "crime of violence" or "aggravated felony" under immigration law. 376 F.3d 75, 77–78 (2d Cir.2004). In so holding, we explained that a petitioner must "raise *issues* to the BIA in order to preserve them for judicial review." *Id.* at 78 (internal quotation omitted).

While we held in *Beharry* that the exhaustion requirements preclude a petitioner from raising a whole new *category of relief* on appeal, in *Foster* that a petitioner must have raised an *issue* below to present it on appeal, and in *Theodoropoulos II* that the statutory exhaustion requirement precludes a petitioner from bypassing the administrative review process altogether, we have never held that a petitioner is limited to the exact contours of his argument below. To the contrary, in *Restrepo v. McElroy*, 369 F.3d 627 (2d Cir.2004), we held that § 1252(d)(1) did not prevent us from considering a wholly new reliance argument on appeal because Restrepo did "raise[ ] the *general* issue of the AEDPA's retroactivity . . . in his habeas petition, and we enjoy broad discretion to consider subsidiary legal arguments that were not specifically raised below." *Id.* at 633 n. 10 (emphasis added). We used "subsidiary" in a broad sense; the reliance argument Restrepo made in his administrative proceedings was that AEDPA (which foreclosed a form of relief sought by Restrepo)

should not apply retroactively to *crimes* committed, or *convictions* entered, before the law's effective date, whereas the "subsidiary" argument he raised on appeal was that AEDPA should not apply to him because he decided, in reliance on the law pre-AEDPA, to delay his *application for relief* until a later date when he would be better able to demonstrate rehabilitation.

In *Drax v. Reno*, 338 F.3d 98, 112 n. 19 (2d Cir.2003), we similarly held that § 1252(d)(1) does not limit our review to those arguments specifically raised below. In that case, we found jurisdiction to decide Drax's eligibility for a certain type of relief from deportation-"*Gabryelsky* relief"-where the relief was not specifically sought before the BIA but was "merely an extension of the argument his counsel raised directly before the BIA-that the Immigration Judge erred in holding that no relief was available on account of the retroactive application of [a subsequent amendment]." [6]

▇ The rule that emerges from this precedent is that § 1252(d)(1) bars the consideration of bases for relief that were not raised below, and of general issues that were not raised below, but not of specific, subsidiary legal arguments, or arguments by extension, that were not made below. Our decision in *Restrepo* and *Drax* not to interpret § 1252(d)(1) to require complete conformity between an alien's ar-

**6.** Contrary to the dissent's suggestion, *Gabryelsky* relief is not simply relief under two grounds "read together,". Rather, it is a "legal fiction" by which an alien can simultaneously seek relief from removal for a drug conviction and a weapons conviction (two classes of crime that are treated differently in immigration law), where otherwise each crime would preclude relief from removal for the other. *Drax*, 338 F.3d at 111. Thus, when *Drax* found jurisdiction to decide a claim for *Gabryelsky* relief "as an extension" of Drax's very general argument below that

he was not precluded by subsequent amendments from *seeking relief,* it set a far broader precedent than the dissent acknowledges, and one that clearly supports jurisdiction here.

Indeed, there appears to be some tension between *Drax* 's jurisdictional holding and dicta elsewhere in the opinion, *see* 338 F.3d at 110 n. 17, that Drax *may* have failed to exhaust a separate retroactivity issue in his case by failing to raise it below. We give more weight to note 19 as it is part of the holding of the case and as note 17 reaches no definite conclusion.

gument below and on appeal makes particular sense given that immigration law has undergone rapid changes in recent years and given the fundamental interests at stake.[7] Because Gill raised below the general issue, as characterized by the IJ in his February 1, 2002 order, of whether "*Attempted* Assault in the 2nd degree .... involve[s] the required mens rea or a guilty corrupt mind or vicious motive" (emphasis added), we have jurisdiction to consider the specific subsidiary argument (or argument by extension) that Gill's conviction for "attempted reckless assault" fails to meet the mental state requirement of the CIMT definition because, under New York law, such a conviction is legally incoherent.[8]

We further find that the *judicial* exhaustion doctrine would not bar consideration of a specific, subsidiary legal argument, particularly one that is purely legal and falls outside the INS's traditional area of expertise. *See McCarthy v. Madigan,* 503 U.S. 140, 145–46, 112 S.Ct. 1081, 117 L.Ed.2d 291 (1992) (exhaustion concerns strongest "when the action under review involves exercise of the agency's discretionary power or when the agency proceedings in question allow the agency to apply its special expertise," as well as when judicial review would benefit from an administrative factual record), *superceded by statute on other grounds as noted in Booth v. Churner,* 532 U.S. 731, 732, 121 S.Ct. 1819, 149 L.Ed.2d 958 (2001); *cf. Beharry,* 329 F.3d at 62 (judicial exhaustion doctrine would bar consideration of fact-specific claim of eligibility for discretionary relief). Moreover, to the extent that Gill may have technically waived the legal incoherence argument by failing to make it below, we retain broad discretion, which we now exercise in Gill's favor, to consider waived arguments that are purely legal. *See Marrero Pichardo v. Ashcroft,* 374 F.3d 46, 54 (2d Cir.2004).

■ Even had we found that Gill's omission was a failure to exhaust his administrative remedies under § 1252(d)(1), we nonetheless would have assumed jurisdiction to avoid manifest injustice. This Court recently so held in *Marrero Pichardo v. Ashcroft,* noting that "[c]ourts have historically interpreted procedural rules to prevent a fundamental miscarriage of justice." 374 F.3d at 53; *cf. Sun v. Ashcroft,* 370 F.3d 932, 942 n. 16 (9th Cir.2004) ("There is agreement among the circuits that have addressed the issue that exceptions do apply to § 1252(d)(1), although the contours of such exceptions remain to be fully developed.")[9]

7. While we agree with the dissent that there is no "jurisdiction of the heart," it does not follow that a court must be completely indifferent to the interests at stake when exercising lawful discretion or interpreting general statutory language.

8. The dissent objects that our holding today results in *de novo* consideration on how Gill's crime should be characterized rather than the more deferential standard that would have applied had the BIA pronounced on the issue. Fortunately, the standard of review in this case is irrelevant. Had we been presented with a BIA holding that a legally incoherent crime of conviction-*i.e.*, one that, under the relevant state law, is conceptually impossible and would necessarily be overturned if decided by a jury-can nonetheless be classified as a CIMT, we would have found such an interpretation unreasonable.

9. *Booth v. Churner,* 532 U.S. 731, 121 S.Ct. 1819, 149 L.Ed.2d 958 (2001) is not to the contrary. There, the Supreme Court addressed whether the exhaustion requirement of the Prison Litigation Reform Act allowed for a futility exception. The Court found that it did not, based on the legislative history of the Act, and in particular Congress's decision to *eliminate* previously-available statutory exceptions for futility. *Id.* at 740–41, 121 S.Ct. 1819. On its face, *Booth* is limited to statutes in which Congress expressly foreclosed any judicially-created exception. *See id.* n. 6.

Manifest injustice would result here were Gill to be removed without full judicial review of the correctness of his removal. As explained below, the merits of his legal incoherence argument are clear-cut in his favor, and "go[ ] to the very basis for his deportation," *Marrero Pichardo,* 374 F.3d at 54. Moreover, these merits were not apparent during Gill's administrative case and have only crystalized in a subsequent opinion by the Third Circuit interpreting New York criminal law, *Knapik v. Ashcroft,* 384 F.3d 84 (3d Cir.2004).[10] Finally, although the record contains little description of Gill's personal circumstances, it does indicate that Gill has lived in this country, with his United States citizen father and other family members, for sixteen years, since he was nine years old; that he has been a lawful permanent resident since 1994; and that he is an honor student who is currently enrolled in college. Taken together, these factors warrant an exception to the statutory jurisdiction requirement. *See Marrero Pichardo,* 374 F.3d at 54 (exercising jurisdiction, in closely analogous circumstances, based on precisely the same considerations).

The dissent suggests that *Marrero Pichardo* must be read narrowly because it is a "single case, decided by a panel of this Court last year," and is in tension with *Theodoropoulos II.* Post. The dissent does not attempt to locate any distinction in the text of *Marrero Pichardo,* which is squarely on point factually. Nor do we see how it is in any tension with *Theodoropoulos II,* let alone in such tension that it must be narrowed. In *Theodoropoulos II,* we held that an applicant who had waived all administrative appeals was barred by the exhaustion requirement from seeking

judicial review, and that no exception to the exhaustion requirement arose from the fact that his legal argument was, at the time he waived his administrative appeal, contrary to administrative precedent. (Apparently, there were no further circumstances urged by Theodoropoulos as bases for finding jurisdiction.) Contrary to the dissent's characterization, we did not hold in *Theodoropoulos II* that "(absent a Constitutional problem) there is no exception to the exhaustion requirement for *any claim* that could have been raised in the BIA," *see* post (emphasis added). We specifically limited the holding of *Theodoropoulos II* to the facts by declining to fix the "precise boundaries" of possible exceptions to the exhaustion rule. 358 F.3d at 173. *Marrero Pichardo* simply adds further definition to these boundaries in analyzing the facts of that case.

■ Finally, we have the power to consider the legal incoherence of Gill's crime of conviction even though Gill has not raised it *here. See Lambert v. Genesee Hosp.,* 10 F.3d 46, 56 (2d Cir.1993) ("[W]e have discretion to consider and decide *sua sponte* a dispositive issue of law."), *cert. denied,* 511 U.S. 1052, 114 S.Ct. 1612, 128 L.Ed.2d 339 (1994); *see also Thomas v. Crosby,* 371 F.3d 782, 793 (11th Cir.2004) (Tjoflat, *J.,* concurring) ("It is beyond dispute that, in general, we have the power to consider issues that a party fails to raise on appeal, even though the petitioner does not have the right to demand such consideration."); *United States v. Boyd,* 208 F.3d 638, 652 (7th Cir.2000) (finding an intercircuit consensus that courts of appeals "may, when justice requires it, raise critical issues of law sua sponte"), *vacated on other grounds,* 531 U.S. 1135, 121 S.Ct. 1072, 148 L.Ed.2d 949 (2001); *Cruz v. Me-*

10. *See infra* Part III.B. We are, however, somewhat surprised that Gill's counsel could have failed to take note of *Knapik* in prosecut-

ing Gill's subsequent petition before this Court.

*lecio,* 204 F.3d 14, 22 n. 7 (1st Cir.2000) ("Notwithstanding that the parties did not raise the issues that impel us to this course either to the district court or on this appeal, we have the power to do so *sua sponte.*"); *United States v. Heater,* 63 F.3d 311, 331 n. 5 (4th Cir.1995) ("Although [petitioner] did not raise the Ex Post Facto argument himself, we find it within our discretion to consider this constitutional concern *sua sponte.*"), *cert. denied,* 516 U.S. 1083, 116 S.Ct. 796, 133 L.Ed.2d 744 (1996).

## II. Standard of Review

██ Because the BIA has expertise applying and construing immigration law, we afford *Chevron* deference to its construction of undefined statutory terms such as "moral turpitude." *See Chevron U.S.A., Inc. v. Natural Res. Def. Council, Inc.,* 467 U.S. 837, 843–44, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984); *Michel v. INS,* 206 F.3d 253, 262–65 (2d Cir.2000) (deferring to BIA's rule that crimes of which knowledge is an element are generally CIMTs). However, as we recognized in *Michel,* 206 F.3d at 262, the BIA has no expertise in construing federal and state *criminal* statutes, and so we review *de novo* the BIA's finding that a petitioner's crime of conviction *contains* those elements which have been properly found to constitute a CIMT. *See also Sutherland v. Reno,* 228 F.3d 171, 174 (2d Cir.2000). Thus, in this case, we defer to the BIA's view that recklessness, in combination with serious resulting bodily injury and use of a deadly weapon, amounts to a CIMT, but we review *de novo* the BIA's finding that "attempted reckless assault" under New York law contains these elements.

## III. Gill's alleged CIMT

We turn now to the question of whether Gill's conviction for attempted reckless assault was a CIMT such that he was removable under 8 U.S.C. § 1227(a)(2)(A)(i).

## A. Definition of CIMT in immigration law

██ At the outset, we affirm the BIA's holding that reckless assault with a deadly instrument resulting in serious bodily harm is a CIMT. "Moral turpitude" is a term used to refer to offenses that are "inherently base, vile, or depraved." *Hamdan v. INS,* 98 F.3d 183, 186 (5th Cir.1996) (quoting from the BIA decision). In assessing whether a crime of conviction is a CIMT, the BIA takes the "categorical approach," focusing on "the intrinsic nature of the offense rather than on the factual circumstances surrounding any particular violation." *Dalton v. Ashcroft,* 257 F.3d 200, 204 (2d Cir.2001). Thus, to constitute a CIMT, a criminal category must by definition, and in all instances, contain each of those elements that constitute a CIMT. *Michel,* 206 F.3d at 263.

"[I]t is in the intent that moral turpitude inheres," *United States ex rel. Meyer v. Day,* 54 F.2d 336, 337 (2d Cir.1931), and therefore the BIA's focus is on the mental state reflected in a given offense. Crimes committed knowingly or intentionally generally have been found, on the categorical approach, to be CIMTs. *Michel,* 206 F.3d at 263. Likewise, crimes committed recklessly (where recklessness is defined as a *conscious* disregard of substantial and unjustifiable risk) have, in certain aggravated circumstances, been found to express a sufficiently corrupt mental state to constitute a CIMT. *See, e.g., Matter of Medina,* 15 I. & N. Dec. 611, 614 (BIA 1976) (holding that, although moral turpitude does not inhere in all crimes of recklessness, it does inhere in reckless assault with a deadly weapon); *cf. Matter of Fualaau,* 21 I. & N. Dec. 475, 478 (BIA 1996) (holding that

reckless assault was not a CIMT because no serious bodily injury resulted).

We find that the BIA's definition of "moral turpitude" is consistent with the precedent set forth *supra*, and is reasonable.

### B. Gill's crime of conviction

■ As set forth *supra*, we now review *de novo* the BIA's characterization of Gill's crime of conviction. Gill pleaded guilty to attempted second-degree assault in violation of N.Y.P.L. § 120.05(4)-that is, attempting to "recklessly cause[ ] serious physical injury to another person by means of a deadly weapon or a dangerous instrument." Under New York law, "[a] person is guilty of an attempt to commit a crime when, with intent to commit a crime, he engages in conduct which tends to effect the commission of such crime." N.Y.P.L. § 110.00. This standard has been characterized as a specific intent standard. *People v. Campbell*, 72 N.Y.2d 602, 605, 535 N.Y.S.2d 580, 581–82, 532 N.E.2d 86, 87–88 (1988).

A charge of attempting to commit a crime of recklessness has a certain conceptual incoherence, particularly where, as here, the offense is partly defined by its result (serious bodily injury). A defendant can only be guilty of attempted assault if he specifically intended all elements of that offense, but § 120.05(4) is worded such that a defendant can be convicted simply because his assault *resulted* in serious injury, regardless of whether he intended such a result. Recognizing this type of incoherence, the New York Court of Appeals dismissed an analogous charge in *Campbell*, 72 N.Y.2d at 605, 535 N.Y.S.2d at 582, 532 N.E.2d at 88.[11] The court reasoned that,

"[b]ecause the very essence of a criminal attempt is the defendant's intention to cause the proscribed result, it follows that there can be no attempt to commit a crime which makes the causing of a certain result criminal even though wholly unintended," and thus "there can be no attempt to commit assault, second degree (Penal Law § 120.05[3])."

In *People v. Esquilin*, 159 A.D.2d 632, 633, 552 N.Y.S.2d 953, 955 (2d Dep't 1990), the Appellate Division extended *Campbell's* holding to reverse a jury conviction for attempted kidnapping. There, the court held that, like second degree assault,

> kidnapping in the first degree under Penal Law § 135.25(3) occurs when the accused, with intent to restrain the victim, does so restrain the victim by the use or threatened use of deadly force and, during the course of this abduction the victim dies. The gravamen of this charge is not the abduction but, rather, the unintended death. The causing of this result being criminal even if unintended, it follows that there can be no attempt to cause this result.

*Id.* (citations omitted).

The legal incoherence theory has also been applied to crimes of recklessness. In *People v. Terry*, 104 A.D.2d 572, 573, 479 N.Y.S.2d 278, 279–80 (2d Dep't 1984), for example, the Appellate Division reversed a jury conviction of attempted second degree murder, holding that one cannot attempt to commit second degree murder, *i.e.*, cause someone's death by "recklessly engag[ing] in conduct which creates a grave risk of death to another person," under circumstances "evincing a depraved indifference to human life." N.Y.P.L.

---

11. The statute at issue in *Campbell*, § 120.05(3), provides that assault in the second degree may consist of causing serious physical injury to a "peace officer, police offi-
cer, fireman, paramedic, technician or medical or related personnel" with the intent "to prevent [him/her] ... from performing a lawful duty."

§ 125.25(2). Because § 125.25(2) "involves no intent, only a culpable mental state of recklessness," the court explained, it is incompatible with the specific intent requirement of the criminal attempt provision. *Terry,* 104 A.D.2d at 573, 479 N.Y.S.2d at 279–80; *see also People v. McDavis,* 97 A.D.2d 302, 303, 469 N.Y.S.2d 508, 510 (4th Dep't 1983) ("[T]here can be no attempt to commit a crime that does not involve a specific intent, such as manslaughter in the second degree, a crime predicated upon a reckless act."); *People v. Trepanier,* 84 A.D.2d 374, 380, 446 N.Y.S.2d 829, 833 (4th Dep't 1982) ("The crime of attempted reckless endangerment is nonexistent since it is a non-intent offense.")

■ As these cases demonstrate, a person cannot "attempt" (as this term is used in New York criminal law) to commit a crime of recklessness, particularly not one defined, as in § 120.05(4), by an unintended result such as bodily injury. The question that follows is what significance, if any, this legal impossibility should have in the immigration context. Although this is a question of first impression in this circuit as well as in most other circuits, the Third Circuit addressed the question in a case interpreting New York law: *Knapik v. Ashcroft,* 384 F.3d 84 (3d Cir.2004). In that case, the court considered a BIA determination that Knapik's crime of conviction-attempted reckless endangerment-was a CIMT. The *Knapik* court found that the concept of intentional recklessness was "nonsensical," and that New York courts had recognized it as such. *Id.* at 91 (citing *Terry,* 104 A.D.2d 572, 479 N.Y.S.2d 278; *Trepanier,* 84 A.D.2d 374, 446 N.Y.S.2d 829). Because Knapik's crime of convic-

tion was nonsensical, the court found that it could not demonstrate "moral turpitude."

We find the Third Circuit's logic persuasive and directly on point. Without in any way questioning the *state's* ability to hold a defendant to his plea to an attempted reckless crime (which may have made practical sense in terms of reaching a contextually appropriate sentence or sentencing range),[12] we find that, in the immigration context, *no* mental state can be clearly discerned from such a conviction, let alone the sort of aggravated recklessness that has been found to demonstrate moral turpitude, *see Matter of Medina,* 15 I. & N. Dec. 611, 613–14 (BIA 1976).

### CONCLUSION

For the foregoing reasons, because Gill's crime of conviction was not a crime involving moral turpitude, we reverse the BIA's removal order and remand with instructions to close Gill's removal proceedings. The stay of removal, which was in place pending our decision, will expire upon issuance of the mandate.

JACOBS, Circuit Judge, dissenting.

Shobinder Gill, a citizen of India who became a lawful permanent resident in 1994 and has been convicted of two offenses while still in college, appeals from an order of the Board of Immigration Appeals ("BIA") (affirming the ruling of an Immigration Judge ("IJ")) that one of Gill's offenses (attempted reckless assault with a deadly weapon, to wit, a firearm) amounts to a Crime Involving Moral Turpitude ("CIMT")-a ruling that mandates removal under section 237(a)(2)(A)(i) of the

---

**12.** *See People v. Foster,* 19 N.Y.2d 150, 153–54, 278 N.Y.S.2d 603, 605–06, 225 N.E.2d 200, 201–02 (1967) (defendant who sought and accepted a plea of attempted manslaugh-

ter, in exchange for substantially reduced exposure, could not later challenge his conviction as legally incoherent).

Immigration and Naturalization Act, 8 U.S.C. § 1227(a)(2)(A)(i). There is no defect in that ruling, and we lack jurisdiction to seek one.

In reversing, the majority opinion conceives *sua sponte* the argument that an "attempt" at reckless conduct is an incoherent basis for the level of intent required for a CIMT, and is satisfied that "the merits of his legal incoherence argument are clear-cut in his favor.". First, the argument is not "his"; it is raised *sua sponte* by the majority. When judges raise an issue *sua sponte* and consider it without briefing, no one should be surprised that the issue seems to them to be "clear-cut." In any event, because Gill never raised that argument to the BIA, the argument is unexhausted, and this Court therefore lacks jurisdiction to consider it.

The majority premises appellate jurisdiction on the idea that the argument is "subsidiary" to an argument that Gill did make (that "reckless" conduct involves insufficient mens rea), and on the "manifest injustice" that would ensue if the argument is not enlisted to keep Gill in the United States. The supposed "manifest injustice" (according to the majority) is that the argument Gill omitted to make is valid, and that Gill is a lawful resident and an honor student. I conclude: that the argument decided by the majority is unexhausted; that exhaustion is required no matter how effective an argument may seem on appeal; and that Gill's status as an honor student confers no jurisdiction (though it may confer on his unfortunate parents the right to display a bumper sticker). I therefore respectfully dissent.

## I

In January 1999, Gill was convicted in New York County of theft of services, in violation of N.Y.P.L. § 165.15, a misdemeanor. In June 1999, Gill pled guilty in Queens County to an attempt to commit *intentional* assault with a deadly weapon, a felony. N.Y.P.L. §§ 110 (attempt); 120.05(2) (assault). In August, the INS initiated removal proceedings pursuant to 8 U.S.C. § 1227(a)(2)(A)(i) on the ground-uncontested in the majority opinion-that an attempt to commit intentional assault is a CIMT. When the INS learned of the theft of services, that was added to the removal petition.

As the IJ observed, Gill retained a lawyer "who was obviously well-schooled in immigration law," and who, while removal proceedings were in an early stage, "went back to Criminal Court [in both counties of conviction] and had [Gill's] prior convictions amended." The attempted assault conviction was reduced from intentional to reckless (still a felony), and the theft of services conviction was reduced to disorderly conduct (a violation).

The INS conceded that disorderly conduct was not ground for removal, but maintained that the assault conviction was still a CIMT. Gill argued that the charge did not involve the mens rea required for a CIMT because it was for a *reckless* assault rather than one that was *intentional.* The IJ initially agreed, but in November 2000 granted the INS's motion to reconsider, noting that he would have reconsidered his ruling *sua sponte* because he had made a mistake of law. By written order in February 2002, the IJ held that Gill had committed a CIMT and therefore was removable.

There is no sign in the record that Gill raised an issue as to whether *attempted* recklessness is a cognizable mental status under New York law.

Gill's counsel argued to the BIA that the IJ erred in granting the motion to reconsider and that "reckless conduct does not involve moral turpitude." Neither Gill nor

the INS nor the BIA raised an issue as to whether "recklessness" can be "attempted" under New York law; the word "attempt" appears nowhere in the argument section of Gill's appeal to the BIA. The BIA concluded that the motion to reconsider was appropriately granted, and agreed with the IJ that Gill's conviction is a CIMT.

Gill timely appealed to this Court, presenting the same two challenges: one concerning the propriety of the INS's motion to reconsider (a non-starter because the IJ would have reconsidered *sua sponte*); the second as to whether a *reckless* assault is a CIMT. Gill's brief presents his second argument this way:

> Petitioner was convicted of a crime alleging reckless conduct (New York Penal Law § 120.05(4)). There is no evidence of mens rea set forth in the New York statute to determine that Petitioner committed a crime involving moral turpitude.

Gill's brief nowhere highlights that the offense is one of *attempt*, or cites to the New York Penal Law governing attempt, or argues that the attempt (as opposed to completion) matters; the word "attempt" appears once, where counsel recites the offense of conviction among the facts.

## II

"A court may review a final order of removal only if [ ] the alien has exhausted all administrative remedies available to the alien as of right." 8 U.S.C. § 1252(d)(1). "Failure to exhaust [these remedies] constitutes a clear jurisdictional bar." *Foster v. INS*, 376 F.3d 75, 77 (2d Cir.2004) (internal citation and quotation marks omitted). So if Gill failed to exhaust a claim before the INS, we lack jurisdiction to review it. *See Beharry v. Ashcroft*, 329 F.3d 51, 59 (2d Cir.2003). This statutory exhaustion requirement is mandatory, not discretionary. *Id.* at 56–57; *Bastek v. Fed. Crop Ins. Corp.*, 145 F.3d 90, 94 (2d Cir.1998). And it is not subject to judicial exception. *See Booth v. Churner*, 532 U.S. 731, 741 n. 6, 121 S.Ct. 1819, 149 L.Ed.2d 958 (2001); *see also Beharry*, 329 F.3d at 57–58.

The majority opinion does not contend that the argument on which it rests was actually made below; instead, it contends that the "argument is subsidiary to the general argument Gill did make before the BIA: that his crime of conviction did not reflect a sufficiently culpable mental state to be designated a CIMT.". This is error because: [i] the majority opinion casts Gill's argument in the BIA at a higher level of generality than Gill ever did; and [ii] the "attempted recklessness" argument on which the majority relies is not "subsidiary" to the argument that Gill in fact made.

As demonstrated above, Gill's whole argument to the BIA, as set out in the first sentence of his argument on CIMT classification, was: "The Board must conclude that reckless conduct does not involve moral turpitude and that the [IJ] erred in finding otherwise." Gill made no broader argument that "his crime of conviction" reflects generally an "insufficiently culpable mental state"; he argued (over and over) that the "recklessness" constitutes the insufficiency:

> While the respondent, Gill, in the case before [the BIA] used a weapon, he stands convicted only of reckless conduct; and, therefore, he did not have the requisite mens rea required to compel [the BIA] to find that the crime involved an act of moral turpitude.

> \*   \*   \*   \*   \*   \*

Recklessness is defined in *Black's Law Dictionary, Sixth Edition* as: rashness, heedlessness, and wanton conduct.

What is significant is the absence of the word *intent*.

\* \* \* \* \* \*

[In an earlier case, the BIA] decided that while reckless conduct... may form the basis for a determination that a crime involves moral turpitude [the BIA has never held] that a crime involving reckless conduct is per se a crime involving moral turpitude.

\* \* \* \* \* \*

Reckless conduct may not necessarily involve moral turpitude....

\* \* \* \* \* \*

The [BIA], without particular emphasis or fanfare appears to have developed at least two separate and distinct lines of cases which relate to whether or not a conviction for a crime of reckless conduct is also one involving moral turpitude.

Appellate opinions that undertake to address "subsidiary" arguments to those raised in the BIA do so only because consideration of the appellate argument does not subvert the purpose of administrative exhaustion in the immigration context: to provide the INS, "as the agency responsible for construing and applying the immigration laws and implementing regulations" with "a full opportunity to consider a petitioner's claims before they are submitted for review by a federal court." *See Foster*, 376 F.3d at 77 (*quoting Theodoropoulos v. INS*, 358 F.3d 162, 171 (2d Cir. 2004)). The majority seizes on a single sentence in *Foster* that more expansively says "issues" must be raised before the BIA in order to be exhausted. This context-free quote puts more weight on the word "issue" than it will bear: the raising of an "issue" in the BIA matters only if it is one that alerted the agency to the issue that is being taken up on appeal. In light of the purpose of the exhaustion require-

ment, an issue may be "subsidiary" (and therefore within our jurisdiction even though not argued in so many words) if consideration of it was necessarily prompted by consideration of an issue expressly argued, or if it was necessarily rejected by the same logic, or if there is some other sufficient sign that the BIA had a full opportunity to consider it. *See Foster*, 376 F.3d at 78. Otherwise, the doctrine of "subsidiary" issues would nullify the exhaustion requirement.

Thus in *Foster* the petitioner's "general protestations [to the BIA] that his removal was improper" did not let him argue on appeal that his crime of conviction was not an aggravated felony requiring removal because it was not a "crime of violence." *Id.* at 77–78. The Court found no exhaustion notwithstanding that Foster appeared *pro se* and that the Court therefore construed his submissions "generously." *Id.* at 78. *A fortiori*, Gill and his counsel cannot be deemed to have exhausted an argument that they never made.

Gill argued before the BIA that a *reckless* assault entails an insufficient mens rea to be a CIMT. The BIA ruled otherwise, and the majority acknowledges that that ruling commands *Chevron* deference. On this appeal, the majority poses and answers the question whether reckless assault amounts to a CIMT if it is *attempted* rather than completed. The question whether CIMT classification is supported by one mens rea is not "subsidiary" to the question whether such classification is supported by a different mens rea altogether. Ironically, the majority's holding itself depends on drawing a critical distinction between the mens rea of recklessness (which is indisputably cognizable) and the mens rea of attempted recklessness (which the majority deems legally incoherent).

*Drax v. Reno,* 338 F.3d 98 (2d Cir.2003), neatly draws the distinction between an issue that is subsidiary and one that is not. Drax argued unsuccessfully before the BIA that he was entitled to relief under § 212(c) and under § 245(a); on appeal, the Court undertook to decide whether the two could be read *together* to afford relief even though neither section alone would do, and accurately characterized its analysis as "merely an extension of the argument" made below. 338 F.3d at 112 n. 19. At the same time, the Court suggested that a retroactivity issue presented on appeal was unexhausted (and that appellate jurisdiction as to it was therefore lacking) even though Drax had raised below various *other* retroactivity arguments, as well as the issue of retroactivity generally. 338 F.3d at 110 n. 17.

*Drax* observes a vital distinction between two appellate arguments, one of which was subsidiary to an argument below while the other was not. Tellingly, the majority in the present appeal thinks that these two parts of *Drax* are in "tension" with each other. But the only tension is between *Drax* and the majority opinion here.

In *Restrepo v. McElroy,* 369 F.3d 627, 633 n. 10 (2d Cir.2004), this Court held that a "Petitioner adequately exhausted his administrative remedies with regard to his retroactivity argument .... because the BIA's decision addressed the retroactivity [argument] *and considered the relevant authorities.*" (emphasis added). The question decided in the majority opinion in the present case turns on the interaction between federal immigration law and New York state precedent holding that for various purposes "reckless attempt" is not a

cognizable mental state. The BIA was never presented with that argument, or alerted to it by citation to New York case law.

If the BIA had reviewed and decided that attempted reckless assault with a firearm is a CIMT, the BIA's conclusion would be owed deference, regardless of whether such a mens rea is legally cognizable for other purposes under New York law. Because there was no BIA review, the majority opinion examines the question *de novo.* Thus Gill's failure to exhaust resulted in a more favorable standard of review, and an evasion of the agency to which Congress committed the task of deciding that claim in the first place.

### III

The majority opinion advances an alternative theory in dicta, which constitutes the second (and last) leg of the stool on which the majority expects to seat jurisdiction.[13] The majority thinks that even if Gill failed to exhaust agency review, we must avoid "manifest injustice" by making an exception to the statutory exhaustion requirement in light of Gill's supposedly compelling personal circumstances: that he has been in the United States since age nine, that he became a lawful permanent resident six years after arrival, that his father and some other relatives are in this country, and that he is an honor student in college.

The Supreme Court has held that statutory exhaustion requirements are not subject to judicial exception-making. *Booth,* 532 U.S. at 741 n. 6, 121 S.Ct. 1819; *see also Beharry,* 329 F.3d at 57–58. The Court has suggested, however, the possi-

---

**13.** The majority emphasizes that the judicial exhaustion doctrine is satisfied. That doctrine is a prudential measure to assure that arguments presented to us have been ade-

quately developed in the record below. But, as we lack statutory jurisdiction, it cannot matter what prudence allows.

bility of two narrow exceptions (though each of these exceptions "may technically be less an 'exception' to a statutory exhaustion requirement than it is a statement regarding the parameters of that requirement," *id.* at 58). Thus courts may not be bound by congressional limitations on jurisdiction that raise constitutional problems (such as stripping the courts of all habeas review in violation of the Suspension Clause of the Constitution, Art. I, sec. 9). *See INS v. St. Cyr,* 533 U.S. 289, 305, 121 S.Ct. 2271, 150 L.Ed.2d 347 (2001). The Supreme Court has also suggested that exhaustion requirements (in particular) do not apply if there is no possibility of relief from the administrative agency, in which event "the administrative officers would presumably have no authority to act on the subject of the complaint, leaving the [complainant] with nothing to exhaust." *Booth,* 532 U.S. at 736 & n. 4, 121 S.Ct. 1819. These limited exceptions notwithstanding, "as a general rule courts are required to strictly enforce statutory exhaustion requirements." *Theodoropoulos,* 358 F.3d at 172–73.

In *Foster,* this Court determined that statutory jurisdiction was lacking because the petitioner had not exhausted his claim—and declined to find an exception based on alleged "constitutional concerns." *Foster,* 376 F.3d at 78. After reviewing the cases cited for the proposition that courts may reach beyond statutory jurisdiction where constitutional concerns are implicated, we observed that those cases "involve potential denials of *all* judicial review." *Id.* (emphasis in original). Since Foster had access to judicial review (for the claims he preserved) the Court concluded that no constitutional concern was presented.

In *Theodoropoulos,* we declined to fix "the precise boundaries" of the possible exception to exhaustion requirements, but concluded (sensibly) that the exception would not reach a case in which the relief sought by the petitioner for the first time on appeal was relief that the agency had power to grant. *Theodoropoulos,* 358 F.3d at 172–73.

*Foster* and *Theodoropoulos* thus take account of the Supreme Court's opinions in *St. Cyr* and *Booth:* this Court must require exhaustion unless either [i] the requirement offends the Constitution by foreclosing all judicial review (or otherwise), or [ii] the relief is of a type only a court, and not the agency, could provide in the first place. These few, narrow exceptions are no more than necessary: a statutory jurisdictional exhaustion requirement should not be read to offend any constitutional requirement, and could not be meant to limit claims that are incapable of exhaustion.

In Gill's case, there is no arguable exception to the exhaustion requirement. As in *Foster,* denial of jurisdiction as to Gill's unexhausted claim will not deprive the petitioner of any constitutional right. And Gill's right to judicial review is unimpaired-though limited of course to the claims that Gill raised below. *See Foster,* 376 F.3d at 78. The majority is reaching, as *Theodoropoulos* did not, to decide a claim that the agency had full competence to consider and to redress. Had Gill raised his argument below, the agency had power to grant him relief. If the BIA came to the same conclusion as the majority, the same relief would have been granted. *See Theodoropoulos,* 358 F.3d at 173 ("Regardless of the precise boundaries of any possible exception we find that it would not apply to the case at hand because an appeal to the BIA did provide Theodoropoulos with the possibility of relief.").

In seeking a way to overcome the exhaustion requirement, the majority relies on a single case, decided by a panel of this

Court last year, that describes a "manifest injustice" exception to the jurisdictional bar. *Marrero Pichardo v. Ashcroft*, 374 F.3d 46 (2d Cir.2004). The majority concludes that *Marrero Pichardo* created a new exception to the jurisdictional requirement for sympathetic petitioners with appealing or interesting claims. If so, *Marrero Pichardo* must have overruled *Theodoropoulos* and directly contravened Supreme Court precedent. But *Marrero Pichardo* does not purport to alter any precedent (and could not do so in any event). *Marrero Pichardo* found jurisdiction to review unexhausted claims of a habeas petitioner on the ground that the petitioner fell into the "narrow leeway afforded by *Theodoropoulos*." *Marrero Pichardo*, 374 F.3d at 53. I therefore read the term "manifest injustice" to reference "the limited circumstances" expressly described in *Theodoropoulos, i.e.*, those in which judicial review is unconstitutionally foreclosed or agency relief is unavailable. *Theodoropoulos*, 358 F.3d at 173.

The Court in *Marrero Pichardo* must have concluded that the facts of that case fell within the exceptions suggested by *St. Cyr* and *Booth*. As the majority reads *Marrero Pichardo*, it *sub silentio* overrules *Theodoropoulos*, which expressly held that (absent a constitutional problem) there is no exception to the exhaustion requirement for any claim that could have been raised in the BIA. The majority *cf.*s a panel of the Ninth Circuit for the idea that the contours of the exceptions to the exhaustion rule "remain to be fully developed", and then contends that *Marrero Pichardo* "simply adds further definition to these boundaries in analyzing the facts of the case,". This is an unreliable way to go about defining jurisdictional boundaries. If jurisdiction can be improvised in each case, and if the boundaries are drawn and re-drawn by inference from the fact recitation in each case that invokes "manifest injustice", there is no jurisdictional boundary to speak of.

*Marrero Pichardo* cannot support the proposition that a court can find jurisdiction to overrule an agency result whenever jurisdiction will assist a sympathetic petitioner; there is no such thing as jurisdiction of the heart.

Even if "manifest injustice" could confer jurisdiction in this kind of case, Gill would not be a likely candidate for that indulgence. What brought Gill to the point of removal in the first place? The record does not show particulars of the conduct that caused two New York Counties to prosecute Gill for a felony and a misdemeanor, respectively. Because the one conviction became irrelevant to removal, and because, under this Circuit's "categorical" approach to analyzing crimes involving moral turpitude, the underlying conduct would not matter to CIMT analysis (though it might if a categorical approach yields an "incoherent" answer).

However, the absence of any record as to the underlying conduct frustrates any useful inquiry into the "factors" in Gill's case that bear upon whether his removal would work "manifest injustice." As Gill's counsel assiduously kept this information out of the record before the IJ and BIA, we have no idea. However, one does not usually plead to something more turpitudinous than what one did; and the charge to which Gill plead originally-attempted intentional assault with a deadly weapon, to wit, a firearm-does not provoke anguished sympathy on his behalf. Even a conviction of "attempted reckless" assault means that Gill was an armed menace.

Gill may be at a tender age, but two convictions-one on a felony-while still at a tender age bespeaks a prodigious criminal career. When the majority opinion considers "manifest injustice" in terms of the

"interests at stake", the opinion overlooks the interests of the American public in the removal of persons who commit crimes while guests of the republic. Gill's opportunity to be in this country was a privilege granted with permanent resident status. Congress has decided that one loses that privilege by committing a crime of moral turpitude. Because Gill has done just that, his removal is no "manifest injustice."

The majority treats Gill's offense as conceptually incoherent or metaphysical. It was not. Gill originally plead guilty to attempted intentional assault with a firearm.[14] There is nothing metaphysical about that. According to the majority, the conviction was rendered incoherent-under New York state law-when Gill induced the court to amend it to say that the attempted assault with a gun was reckless rather than intentional. If any offense deemed conceptually incoherent by the New York courts cannot support removal as a CIMT, we had better look out, because as the majority opinion shows, the New York courts deem incoherent such offenses as attempt to commit kidnapping in the first degree, one element of which is the unintended death of the victim; and attempted second degree murder, "*i.e.*, cause someone's death by recklessly engag[ing] in conduct which creates a grave risk of death to another person under circumstances evincing depraved indifference to human life." (internal quotation marks omitted). True, New York courts will grant relief to a defendant convicted of such an "incoherent" offense; but Gill didn't appeal entry of judgment on the incoherent offense; he invited it. And pleas to these incoherent offenses are en-

forceable. *People v. Foster*, 19 N.Y.2d 150, 153–54, 278 N.Y.S.2d 603, 225 N.E.2d 200 (1967).

In any event, having sought re-classification of his offense, Gill is in no position to make the argument that the offense (as re-classified) is incoherent. And actually, he hasn't. The majority has reached to do it, *sua sponte* and without briefing, claiming a jurisdiction that is far more incoherent and elusive conceptually than Gill's attempt to do a reckless thing with a gun, and has decided an issue not presented to the agency, not considered or decided by it, and not presented here either. The chance of getting the law right under these circumstances is much diminished.

\*    \*    \*    \*    \*    \*

The only challenges properly before us are that [i] the IJ erred in granting the INS's motion to reconsider, thereby reversing its earlier holding that Gill's crime of conviction was not a CIMT, and [ii] the BIA erred in determining that Gill's reckless assault was a CIMT. Both are without merit, and I would therefore deny the petition.

---

14. The majority contends that Gill "pleaded guilty to attempted second-degree assault in violation of N.Y.P.L. § 120.05(4)-that is, attempting to 'recklessly cause[ ] serious physical injury to another person by means of a deadly weapon or a dangerous instrument.' "

Gill originally pleaded guilty to attempted intentional assault in violation of N.Y.P.L. § 120.05(2), which is attempting assault "with intent to cause physical injury to another person...."