**Qixin DONG, Petitioner,**

v.

**Alberto R. GONZALES, Attorney General of the United States, Respondents.**

**No. 05–4292–ag.**

United States Court of Appeals, Second Circuit.

May 11, 2006.

Judy S. Resnick, Far Rockaway, New York, for Petitioner.

Michael J. Garcia, United States Attorney for the Southern District of New York, Beth E. Goldman, Sara L. Shudofsky, Assistant United States Attorneys, New York, New York, for Respondent.

PRESENT: Hon. CHESTER J. STRAUB, Hon. SONIA SOTOMAYOR, and Hon. ROBERT A. KATZMANN, Circuit Judges.

268

## SUMMARY ORDER

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, Foley Square, in the City of New York, on the 11th day of May, two thousand and six.

UPON DUE CONSIDERATION of this petition for review of the Board of Immigration Appeals ("BIA") decision, it is hereby ORDERED, ADJUDGED, AND DECREED that the petition for review is DENIED.

Qixin Dong, through counsel, petitions for review of the July 14, 2005 BIA decision affirming the decision of Immigration Judge ("IJ") Paul A. DeFonzo denying his applications for asylum, withholding of removal, and relief under the Convention Against Torture ("CAT"). We assume the parties' familiarity with the underlying facts and procedural history of the case.

When the BIA issues an opinion that fully adopts the IJ's decision, this Court reviews the IJ's decision. *See, e.g., Chun Gao v. Gonzales*, 424 F.3d 122, 124 (2d Cir.2005); *Secaida–Rosales v. INS*, 331 F.3d 297, 305 (2d Cir.2003). This Court reviews the agency's factual findings, including adverse credibility determinations, under the substantial evidence standard, treating them as "conclusive unless any reasonable adjudicator would be compelled to conclude to the contrary." 8 U.S.C. § 1252(b)(4)(B); *see Zhou Yun Zhang v. INS*, 386 F.3d 66, 73 & n. 7 (2d Cir.2004).

The IJ's adverse credibility finding is substantially supported. The IJ determined Dong to be incredible because, while he testified that he finally located his wife at the Guan Tou Town Hospital two days after she was taken away by the authorities for a forced abortion, the letter from his father indicated that Dong's wife returned home on the same day that she was allegedly taken away and that Dong found out about the abortion from his wife

when she returned on that same day. The IJ also determined Dong not to be credible because he asserted that he ultimately found his wife at the same hospital where he had gone to look for her, but where he allegedly did not find her two days earlier. When it was pointed out that Dong had testified he had gone to the Guan Tou Town family planning offices two days earlier to look for his wife, not the Guan Tou Town Hospital, Dong hesitated considerably, but finally replied that he "mean[t] the family planning office located in the hospital, when [he] said family planing office [he] meant hospital." Given that Dong also testified that he did not go the hospital on the evening that he discovered that his wife had been seized by family planning officials, "[b]ecause they were just local hospital doctors ... [and] they were the family planning officials who took her away," the IJ's dismissal of Dong's explanation was reasonable.

The IJ also found Dong incredible because, whereas he testified that he was fined 3,000 RMB by the authorities in order to punish him for criticizing the authorities for forcibly aborting his wife, the fine-receipt he submitted stated that he was fined for an unauthorized pregnancy. Further, Dong testified that he was not at home when the authorities came and levied the fine, but he contradicted himself on cross-examination by stating that he was home when they came.

The IJ also found Dong not credible because he testified that when he visited the Public Security Bureau office, he was detained for two hours and then released when the authorities determined that they had no grounds to hold him, and that, once released, he returned home and informed his family about his ordeal. The letters from both Dong's father and Dong's wife alleged, however, that Dong was released from detention only after his father inter-

ceded on his behalf. Finally, the IJ found Dong incredible because he omitted any mention of his alleged arrest and detention from his asylum application. When questioned about this omission, Dong claimed that he was never asked about any such details during the course of the preparation of his application. However, question # 4 on the asylum application clearly asks whether the applicant was ever arrested or detained.

These findings support the IJ's decision, notwithstanding the IJ's occasional expectation of too much detail in the letters from Dong's father and wife. *See Xiao Ji Chen v. U.S. Dep't of Justice*, 434 F.3d 144, 159–165 (2d Cir.2006); *cf. Cao He Lin v. U.S. Dep't of Justice*, 428 F.3d 391, 395, 406 (2d Cir.2005). Since Dong has been found to be incredible, he cannot demonstrate a well-founded fear of persecution to support his asylum claim. *See Ramsameachire v. Ashcroft*, 357 F.3d 169, 178 (2d Cir.2004). Because the only evidence of a threat to Dong's life or freedom depended upon his credibility, the adverse credibility determination in this case necessarily precludes success on his claim for withholding of removal. *See Wu Biao Chen v. INS*, 344 F.3d 272, 275 (2d Cir.2003). Since Dong did not raise his CAT claim before the BIA, and he does not raise it here, his claim is both unexhausted and waived. *See* 8 U.S.C. § 1252(d)(1); *Gill v. INS*, 420 F.3d 82, 86 (2d Cir.2005); *Yueqing Zhang v. Gonzales*, 426 F.3d 540, 542 n. 1 (2d Cir.2005). Moreover, because Dong failed to raise before the BIA his claim that the IJ erred in refusing to allow Dong to be represented by counsel at his merits hearing, that claim is unexhausted. *See, Gill*, 420 F.3d at 86.

For the foregoing reasons, the petition for review is DENIED. Having completed our review, Dong's pending motion for a stay of removal in this petition is DENIED as moot.