**Amado Tijane DJALO, Petitioner,**

v.

**Alberto R. GONZALES, Attorney General, Respondent.**

No. 05–3818–ag.

United States Court of Appeals, Second Circuit.

Sept. 6, 2006.

---

Linda C. Flanagan, New York, NY, for Petitioner.

Matthew H. Mead, United States Attorney, Carol A. Statkus, Assistant United States Attorney, Cheyenne, WY, for Respondent.

PRESENT: Hon. DENNIS JACOBS, Hon. ROBERT D. SACK and Hon. PETER W. HALL, Circuit Judges.

### SUMMARY ORDER

Amado Tijane Djalo, a native and citizen of Guinea–Bissau, seeks review of a June 27, 2005, order of the BIA affirming the December 12, 2003, decision of immigration judge ("IJ") Elisa M. Sukkar denying his applications for asylum, withholding of removal, and relief under the Convention Against Torture ("CAT"). *In re Amado Tijane Djalo,* No. A77 566 385 (B.I.A. June 27, 2005), *aff'g* No. A77 566 385 (Immig. Ct. N.Y. City Dec. 12, 2003). We assume the parties' familiarity with the underlying facts and procedural history of the case.

In her decision, the IJ noted two problems with Djalo's evidence that caused her concern, one of which was the basis for her decision to deny his claim for asylum. The first involved questions about the petitioner's identity and his possible use of counterfeit identity documents. The second, on which she based her adverse determination, was that what petitioner testified he had undergone in Guinea–Bissau by way of arrest and beatings did not amount to persecution. The BIA affirmed the IJ's decision, assuming for its analysis that Djalo was credible and agreeing with the IJ that Djalo had not met his burden of proving either past persecution or a well-founded fear of future persecution. "When the BIA adopts the decision of the IJ and supplements the IJ's decision, we review the decision of the IJ as supplemented by the BIA." *Ming Xia Chen v.*

*B.I.A.*, 435 F.3d 141, 144 (2d Cir.2006) (*citing Yu Yin Yang v. Gonzales*, 431 F.3d 84, 85 (2d Cir.2005)). This Court reviews *de novo* questions of law. *Islami v. Gonzales*, 412 F.3d 391, 396 (2d Cir.2005). This Court reviews the agency's factual findings, including adverse credibility determinations, under the substantial evidence standard, treating them as "conclusive unless any reasonable adjudicator would be compelled to conclude to the contrary." 8 U.S.C. § 1252(b)(4)(B); *see, e.g., Zhou Yun Zhang v. INS*, 386 F.3d 66, 73 & n. 7 (2d Cir.2004).

■ As a preliminary matter, and as the government has argued in its brief, *see Lin Zhong v. U.S. Dep't of Justice*, 461 F.3d 101 (2d Cir.2006), this Court does not have jurisdiction to review Djalo's claims regarding incorrect citations, the IJ's failure to allow him to cross-examine the expert witness, and the IJ's use of an improper CAT standard, as he failed to exhaust them properly before the BIA. *See* 8 U.S.C. § 1252(d)(1); *Gill v. INS*, 420 F.3d 82, 86 (2d Cir.2005).

■ The IJ determined, and the BIA affirmed, that based on Djalo's testimony and country condition evidence, Djalo's arrest and one-day detention, during which time he was beaten, was due to conditions of general violence and civil unrest in Guinea–Bissau and not because Djalo was a specific target for mistreatment based on a protected ground. In *Matter of S–P–*, the BIA held that an asylum applicant is not obliged to show conclusively in mixed motive cases why persecution has occurred or may occur. 21 I. & N. Dec. 486, 494–95, 1996 WL 422990 (BIA 1996). Nonetheless, "an asylum applicant 'bear [s] the burden of establishing facts on which a reasonable person would fear that the danger arises on account of his race, religion, nationality, membership in a particular social group, or political opinion.' Thus, ... the standard

for review is whether the applicant has produced evidence from which it is reasonable to believe that the harm was motivated by a protected ground." *Id.* at 490 (internal citations omitted). Djalo's only evidence concerning the rebels' motive for their treatment of him the day he and his brother were detained was his own testimony that it had been in part prompted by the fact his father and brother had been affiliated with the government. Given Djalo's complete testimony about the incident, however, the IJ was not obliged to infer that Djalo was a victim of anything more than the rebels' general lawlessness.

Djalo testified that at 9:00 a.m. on the day in question, the rebels came to his house and tied him and his brother up. The rebels beat them and eventually took them to a detention site thirty kilometers away where they were held with other persons and apparently beaten again. In the afternoon of that day, they were released. They returned home. At no time did anyone tell Djalo why he had been detained. On direct examination Djalo said that the rebels "came [to his home] to steal our belongings and also to kill whoever they suspect[ed] as being a supporter of the government." Djalo testified that he was a merchant and not affiliated with the government. Although he testified that his brother was affiliated in some way with the president, Djalo was not sure what that involvement was. Obviously, however, the rebels freed both of them less than twelve hours after seizing them, a fact that undercuts any suggestion that the rebels were after them because of their perceived political alliance. Djalo at best speculated that he was detained and beaten in part because his father used to be a chief in the military. As the IJ noted, however, Djalo's father had died eighteen years before Djalo was arrested by the rebels. Based on all the evidence presented, it was not

error for the IJ to have determined that Djalo "was not specifically targeted" and that he "was treated similarly to many individuals in the area at the time during a time of conflict which the [petitioner] apparently fell victim of." In sum, substantial evidence from Djalo's own testimony supports the IJ's conclusion that Djalo did not suffer from past persecution. Nor is there evidence in the record that calls into question the IJ's conclusion that Djalo does not have a well-founded fear of being persecuted if returned to Guinea–Bissau.

In addition, the agency appropriately rejected Djalo's CAT claim given the evidence presented. While his past beating at the hands of the rebels may bear on the issue, *see* 8 C.F.R. § 1208.16(c)(3)(i), there is simply insufficient evidence to conclude that Djalo is more likely than not to be tortured in the future. *See Wang v. Ashcroft,* 320 F.3d 130, 134 (2d Cir.2003).

For the foregoing reasons, the petition for review is DISMISSED in part and DENIED in part. Having completed our review, any stay of removal that the Court previously granted in this petition is VACATED, and any pending motion for a stay of removal in this petition is DENIED as moot. Any pending request for oral argument in this petition is DENIED in accordance with Federal Rule of Appellate Procedure 34(a)(2), and Second Circuit Local Rule 34(d)(1).