# United States Court of Appeals
## For the First Circuit

No. 12-1382

HENRY MAZARIEGOS-PAIZ,

Petitioner,

v.

ERIC H. HOLDER, JR., ATTORNEY GENERAL,

Respondent.

PETITION FOR REVIEW OF AN ORDER OF THE

BOARD OF IMMIGRATION APPEALS

Before

Torruella, Selya and Howard,

<u>Circuit Judges</u>.

Randy Olen on brief for petitioner.
Stuart F. Delery, Principal Deputy Assistant Attorney General, Civil Division, Anthony C. Payne, Senior Litigation Counsel, Office of Immigration Litigation, and Ali Manuchehry, Trial Attorney, Office of Immigration Litigation, Civil Division, U.S. Department of Justice, on brief for respondent.

October 25, 2013

**SELYA, Circuit Judge.** Our consideration of the petition for judicial review in this immigration case starts with a jurisdictional puzzle. After piecing together this puzzle, we hold, as a matter of first impression in this circuit, that the administrative exhaustion requirement is satisfied as to particular issues when the agency, either on its own initiative or at the behest of some other party to the proceedings, has addressed those claims on the merits, regardless of whether the petitioner himself raised them. This holding establishes our authority to review the issues advanced in the present petition. Concluding, as we do, that those issues lack bite, we deny the petition.

## I. BACKGROUND

The historical facts are straightforward. The petitioner, Henry Mazariegos-Paiz, a Guatemalan national, entered the United States without inspection on August 20, 2006. He reunited there with his cousin, Deny Adolfo Mazariegos-Mazariegos, who had entered illegally at an earlier date.

On February 11, 2008, the Department of Homeland Security (DHS) commenced removal proceedings against the petitioner. See 8 U.S.C. § 1182(a)(6)(A)(i). He conceded removability, but applied for asylum, withholding of removal, and protection under the United Nations Convention Against Torture (CAT). In support, he claimed both past persecution and a well-founded fear of future persecution based on both his political opinion and his membership in a

-2-

particular social group.[1]  He also claimed a likelihood that he would face torture if he returned to Guatemala.

The DHS also initiated removal proceedings against his cousin Deny, who likewise conceded removability and cross-applied for similar relief.  The two sets of proceedings were consolidated.

Before the consolidated proceedings got underway, the Immigration Judge (IJ) noted, without objection, that the only files on record were each man's application for asylum and withholding of removal (Form I-589).  Deny took the lead before the agency and testified that he and the petitioner left Guatemala because they had become targets of persecution.  Specifically, he asserted that in August of 2005 — roughly one year after their political party, the Great National Alliance (GANA), won the general election — a group of men, ostensibly from the rival Guatemalan Republican Front (FRG), beat the cousins, threatened their lives, and warned that their family would be wiped out unless they "withdrew from politics."

On cross-examination, Deny was asked why his application for withholding of removal was unsupported by affidavits or other corroborating evidence.  His counsel interjected that she had prepared affidavits for her clients and had assumed that they were on file with the Immigration Court.  She then produced three

_____

[1] The petitioner has since abandoned his quest for asylum, and we do not refer again to that ground for relief.

untranslated Spanish-language documents. Two of these — a police report and a medical report — pertained to an attack against the petitioner's uncle. The third document was a copy of Deny's report to a Guatemalan human rights counselor about the August 2005 incident.

Deny's attorney then requested a continuance in order to submit the missing affidavits, translate the proffered documents, and supply other corroborating evidence. Observing that the case had been pending for over a year, the DHS opposed this request. The IJ denied the continuance and marked the untranslated documents for identification only.

When it came time for the petitioner to testify, his counsel offered to waive direct examination. She told the IJ that the petitioner's testimony was "expected to corroborate that of [his cousin] so it would be mostly repetitive." The IJ accepted this representation, and the DHS proceeded to cross-examine the petitioner.

At the conclusion of the hearing, the IJ denied the cousins' applications for withholding of removal and protection under the CAT. She grounded this decision principally on a determination that neither man had testified credibly. In this regard, she noted numerous discrepancies between the applications for relief and the testimony offered at the hearing. She found

that the story that the two cousins told was vague, implausible, and wholly uncorroborated.

Both the petitioner and his cousin appealed to the Board of Immigration Appeals (BIA). In his brief, the petitioner focused solely on the IJ's (allegedly erroneous) decision to consolidate the two cases. In contrast, Deny's brief challenged both the adverse credibility determination and the refusal to continue the hearing.

The BIA consolidated the two appeals, adopted and affirmed the IJ's adverse credibility determination, and upheld the other disputed rulings. The BIA made no distinction as to who had raised which claims but, rather, proceeded as if each man had advanced every claim. Based on the foregoing, the BIA affirmed the orders of removal.

The petitioner secured new counsel and filed this timely petition for judicial review. For aught that appears, his cousin has not sought judicial review.

## II. ANALYSIS

We divide our analysis into three segments. First, we ponder the existence of subject-matter jurisdiction. Thereafter, we mull two separate merits-related rulings.

### A. Jurisdiction.

The government argues that this court lacks subject-matter jurisdiction over the petitioner's claims because he failed

to exhaust his administrative remedies with respect to those claims. In elaboration, it points out that even though the petitioner in this venue tries to advance two merits-related claims — one dealing with the adverse credibility determination and one dealing with the denial of a continuance — he, himself, did not raise either claim before the BIA. The petitioner's best chance to parry this thrust boils down to the following sequence of events: his case and his cousin's were consolidated; his cousin squarely raised before the BIA the issues that the petitioner now seeks to argue; and the BIA actually adjudicated those issues. So viewed, this sequence sufficiently exhausted the issues.

We begin our inquiry into the existence of subject-matter jurisdiction with first principles. As a court of limited jurisdiction, our authority to act in any given case depends upon the extent to which Congress has imbued us with jurisdiction. See Am. Fiber & Finishing, Inc. v. Tyco Healthcare Grp., LP, 362 F.3d 136, 138 (1st Cir. 2004). Pertinently for present purposes, Congress has granted us jurisdiction to review non-constitutional claims arising in the removal context only if "the alien has exhausted all administrative remedies available to the alien as of right." 8 U.S.C. § 1252(d)(1). This exhaustion requirement is jurisdictional; that is, it constitutes a limitation on our power of review. See Athehortua-Vanegas v. INS, 876 F.2d 238, 240 (1st Cir. 1989).

We have interpreted this exhaustion requirement as demanding that issues be exhausted in agency proceedings. See, e.g., Makhoul v. Ashcroft, 387 F.3d 75, 80 (1st Cir. 2004); Ravindran v. INS, 976 F.2d 754, 761 (1st Cir. 1992). Ordinarily, then, an alien who neglects to present an issue to the BIA fails to exhaust his administrative remedies with respect to that issue and, thus, places it beyond our jurisdictional reach.

This method of exhaustion, however, is not exclusive. We think that, short of an alien's direct presentation of an issue to the agency, there is at least one other way in which exhaustion may occur. We explain briefly.

The primary rationale behind the exhaustion requirement is apparent. At bottom, the role of a court on a petition for judicial review of agency action is to appraise the agency's handiwork. Were the court free to delve into the merits of issues not presented to the agency, it would effectively usurp the agency's function. See Unemp't Comp. Comm'n v. Aragon, 329 U.S. 143, 155 (1946). The exhaustion requirement stands as a sentinel against such usurpation. At the same time, it creates a carefully calibrated balance of responsibilities, affording the parties the full benefit of the agency's expertise and allowing the agency the first opportunity to correct its own bevues. See SEC v. Chenery Corp., 332 U.S. 194, 200-01, 209 (1947); Sidabutar v. Gonzales, 503 F.3d 1116, 1121 (10th Cir. 2007).

In the classic case, this rationale permits a finding of exhaustion when a party has squarely presented an issue to the agency. See, e.g., Sunoto v. Gonzales, 504 F.3d 56, 59 (1st Cir. 2007). But it also permits a finding of exhaustion whenever the agency has elected to address in sufficient detail the merits of a particular issue. Cf. INS v. Orlando Ventura, 537 U.S. 12, 16 (2002) (emphasizing importance of allowing agency to address questions in first instance). Where an agency has opted to follow the latter course, there is no logical reason why exhaustion should turn on which party (if either) brought the issue to the agency's attention. We hold, therefore, that an issue is exhausted when it has been squarely presented to and squarely addressed by the agency, regardless of which party raised the issue (or, indeed, even if the agency raised it sua sponte).

We do not write on a pristine page. Our holding today is consonant with the holdings of several of our sister circuits. See, e.g., Lopez-Dubon v. Holder, 609 F.3d 642, 644-45 (5th Cir. 2010); Lin v. Att'y Gen., 543 F.3d 114, 123-26 (3d Cir. 2008); Sidabutar, 503 F.3d at 1112; Abebe v. Gonzales, 432 F.3d 1037, 1041 (9th Cir. 2005) (en banc); Hassan v. Gonzales, 403 F.3d 429, 433 (6th Cir. 2005); Johnson v. Ashcroft, 378 F.3d 164, 170 (2d Cir. 2004). But see Amaya-Artunduaga v. Att'y Gen., 463 F.3d 1247, 1250 (11th Cir. 2006) (per curiam).

In addition, our holding is structurally sound: by addressing an issue on the merits,[2] an agency is expressing its judgment as to what it considers to be a sufficiently developed issue. When a court defers to that exhaustion-related judgment, it avoids judicial intrusion into the domain that Congress has delegated to the agency. See Orlando Ventura, 537 U.S. at 16. We think it follows that if the BIA deems an issue sufficiently presented to warrant full-dress consideration on the merits, a court should not second-guess that determination but, rather, should agree that such consideration exhausts the issue. See Sidabutar, 503 F.3d at 1119-20.

With this framework in place, we can make short shrift of the government's argument. In this case, the BIA undertook a developed discussion of the merits-related issues that the petitioner now seeks to raise. Consequently, this court has jurisdiction to consider those issues notwithstanding the fact that it was Deny, not the petitioner, who urged them before the BIA.

---

[2] There is some disagreement among the courts of appeals as to how deeply an agency, acting sua sponte, must probe an issue in order to exhaust it. Compare, e.g., Sidabutar, 503 F.3d at 1122 (explaining that the sua sponte exhaustion rule should be narrowly applied to instances in which the BIA issues a full explanatory opinion or a discernible substantive discussion on the merits), with, e.g., Hassan, 403 F.3d at 433 (finding exhaustion despite absence of extended agency discussion). The case at hand does not require us to enter into this debate, and we take no view on the matter.

## B.  **Adverse Credibility Determination.**

The IJ rested her decision in this case largely on an adverse credibility determination.  She found, in essence, that the petitioner and his cousin — who had subscribed to a common story — were not credible.  The petitioner challenges that adverse credibility determination.

On a petition for judicial review in an immigration case, our customary focal point is the opinion of the BIA.  But when "the BIA adopts portions of the IJ's findings while adding its own gloss, we review both the IJ's and the BIA's decisions as a unit." Chen v. Holder, 703 F.3d 17, 21 (1st Cir. 2012).  So it is here.

Our review is deferential.  We assay findings of fact, including credibility determinations, under the familiar substantial evidence standard.  See López-Castro v. Holder, 577 F.3d 49, 52 (1st Cir. 2009).  This standard requires us to accept the agency's factual findings as long as they are "supported by reasonable, substantial, and probative evidence on the record considered as a whole." INS v. Elias-Zacarias, 502 U.S. 478, 481 (1992) (internal quotation marks omitted).  This means that the agency's factual findings must endure unless the record is such as to compel a reasonable factfinder to reach a contrary conclusion. See Chhay v. Mukasey, 540 F.3d 1, 5 (1st Cir. 2008); Laurent v. Ashcroft, 359 F.3d 59, 64 (1st Cir. 2004).

In the case at hand, the supportability of the adverse credibility determination is controlled by the REAL ID Act of 2005. Under that regimen, the IJ is directed to consider all relevant factors, including but not limited to the alien's responsiveness, the consistency (or lack of consistency) between his written and oral statements, and the overall plausibility of his tale. See 8 U.S.C. § 1158(b)(1)(B)(iii). In addition, the IJ is encouraged to weigh the presence or absence of corroborating evidence. See id. § 1158(b)(1)(B)(ii); see also Balachandran v. Holder, 566 F.3d 269, 273 (1st Cir. 2009). A reviewing court should assess an IJ's credibility determination through the prism of the statute and in light of the totality of the circumstances. See Rivas-Mira v. Holder, 556 F.3d 1, 4 (1st Cir. 2009).

Against this backdrop, we turn to the petitioner's claim for withholding of removal. To be eligible for such relief, an alien "has the burden of proving that, more likely than not, he would be subject to persecution on account of a statutorily protected ground should he be repatriated." Pulisir v. Mukasey, 524 F.3d 302, 308 (1st Cir. 2008). The alien can carry this burden by demonstrating either that he has suffered past persecution on account of a statutorily protected ground, "thus creating a rebuttable presumption that he may suffer future persecution" if repatriated, or that "it is more likely than not that he will be

-11-

persecuted on account of a protected ground upon his return to his native land." Da Silva v. Ashcroft, 394 F.3d 1, 4 (1st Cir. 2005).

Here, the petitioner relates his claim of persecution to his political opinion and his membership in a particular social group. These two theories coalesce because the social group to which the petitioner alludes is his political party (the GANA). The only evidence of persecution on account of political animus, however, was out of the mouths of the petitioner and his cousin.[3] The IJ's adverse credibility determination rendered that evidence worthless and led inexorably to the rejection of the claim.

The IJ premised her adverse credibility determination on a series of specific findings. To begin, the IJ questioned Deny's I-589 application, which chronicled his membership in the FRG. This was a highly relevant fact because Deny and the petitioner asserted that the FRG was the source of the alleged persecution.

Deny offered no convincing explanation for this profession of FRG membership. Although he asserted that his statement was a mistake, this assertion was undercut by evidence that his application had been read to him; that he was fully aware of its contents; and that he had not sought to correct it. Under these circumstances, we believe that the IJ was entitled not only

---

[3] The IJ determined, at least implicitly, that the interlocking stories told by the petitioner and his cousin had to stand or fall together. The petitioner has not challenged this approach.

-12-

to reject Deny's self-serving explanation but also to doubt his veracity. See Jiang v. Gonzales, 474 F.3d 25, 28 (1st Cir. 2007) (explaining that "[w]here there are two plausible but conflicting views of the evidence, the BIA's choice between them cannot be found to be unsupported by substantial evidence").

The IJ also concluded that the cousins' account of threats to wipe out their family unless they refrained from political activity was implausible. She supported this conclusion by pointing out that neither of the cousins had ever run for, let alone held, political office. Nor was there any extrinsic evidence of political involvement on either man's part. This reasoning is logical, though not inevitable; and there is nothing in the record that would compel a reasonable factfinder to deem the tale of the threat credible.

The IJ also found it troubling that the two cousins failed to produce any corroborating evidence to confirm that they had been beaten by FRG adherents; that they had in fact participated in Guatemalan politics; or that threats had been directed to their family. Where, as here, corroborating evidence appears easily obtainable, the absence of such evidence can be fatal to an alien's application for relief. See Chhay, 540 F.3d at 6. On the facts of this case, the IJ did not act irrationally in attaching weight to the utter absence of any corroborating evidence. See Muñoz-Monsalve v. Mukasey, 551 F.3d 1, 8 (1st Cir.

2008) ("[T]he IJ is warranted in weighing in the balance the existence and availability of corroborating evidence, and the effect of its non-production.").

To sum up, the IJ made a series of specific factual findings that, taken together, cogently support her adverse credibility determination. Accordingly, the adverse credibility determination must be upheld because it is adequately tied to substantial evidence in the record. The denial of the petitioner's application for withholding of removal was, therefore, proper.

This leaves the petitioner's application for protection under the CAT. To gain relief on this application, he had to prove that, more likely than not, he would be tortured if removed to his homeland. See Mariko v. Holder, 632 F.3d 1, 7 (1st Cir. 2011); 8 C.F.R. § 1208.16(c)(2). Because the factual underpinnings of this claim are inextricably intertwined with the factual underpinnings of the withholding of removal claim, the IJ's supportable adverse credibility determination dooms both claims. See Mariko, 632 F.3d at 7.

### C.  Continuance.

The petitioner's last claim of error implicates the denial of his request for a continuance. While an "Immigration Judge may grant a motion for continuance for good cause shown," 8 C.F.R. § 1003.29, the granting of a continuance rests largely in

her discretion.  See Amouri v. Holder, 572 F.3d 29, 36 (1st Cir. 2009); see also Morris v. Slappy, 461 U.S. 1, 11-12 (1983).

We have jurisdiction to review the petitioner's allegation of abuse of discretion with respect to the denial of a continuance, notwithstanding the jurisdictional bar contained in 8 U.S.C. § 1252(a)(2)(B)(ii).  See Alsamhouri v. Gonzales, 484 F.3d 117, 121-22 (1st Cir. 2007).  We do not find that the agency abused its discretion here.

Under the applicable regulation, 8 C.F.R. § 1003.29, the party who seeks a continuance (here, the petitioner) bears the burden of showing good cause.  See Ramchandani v. Gonzales, 434 F.3d 337, 338 (5th Cir. 2005).  The petitioner offered no convincing reason for his failure, over a period of more than a year, to procure corroborating evidence.  By the same token, he offered no convincing explanation for his failure to have the untranslated documents put in proper form.[4]  Parties have an obligation to exercise due diligence in marshaling evidence. Viewed in this light, the IJ's denial of the petitioner's mid-trial request for a continuance was not an abuse of discretion.

---

[4] It is perhaps worthy of mention that only one of these untranslated documents appears to be directly relevant.  That document is Deny's report to a Guatemalan human rights counselor about the alleged attack.  With respect to that document, the IJ warrantably found that, even if admitted, it "would fail to cure the inconsistencies and implausibility in [the petitioner's] case."

-15-

In an attempt to fashion a fallback position, the petitioner asserts that the denied continuance deprived him of a fair hearing and, thus, transgressed his right to due process. We have jurisdiction to review this constitutional claim. See 8 U.S.C. § 1252(a)(2)(D). Our review is de novo. See Chhay, 540 F.3d at 8.

Here, the petitioner received all of the process that was due. We already have established that the IJ did not abuse her discretion in denying the request for continuance. See text supra. That being so, there is no basis for a colorable claim that the denied continuance somehow produced a fundamentally unfair hearing.[5] See Alsamhouri, 484 F.3d at 124.

## III. CONCLUSION

We need go no further. For the reasons elucidated above, we deny the petition for review.

**So Ordered.**

---

[5] In a related vein, the petitioner suggests that the failure to furnish corroborating evidence was the result of ineffective assistance of his former counsel. We lack jurisdiction to consider this suggestion because the issue was neither raised before, nor addressed by, the BIA. See Makhoul, 387 F.3d at 80.