Seepersad v. Sessions

UNITED STATES COURT OF APPEALS

FOR THE SECOND CIRCUIT

_____

August Term, 2016

(Argued: June 28, 2017      Decided: June 8, 2018)

Docket No. 16-64
_____

ASHRAM SEEPERSAD,

*Petitioner*,

v.

JEFFERSON B. SESSIONS III, UNITED STATES ATTORNEY GENERAL,

*Respondent*.

_____

Before:  SACK, HALL, and DRONEY, *Circuit Judges*.

_____

RION LATIMORE, Minneapolis, MN, *for Petitioner*.

TIM RAMNITZ, Attorney, Office of Immigration Litigation, United States
       Department of Justice, Washington, D.C. (Benjamin C. Mizer,
       Assistant Attorney General, Civil Division, Shelley R. Goad,
       Assistant Director, on the brief), *for Respondent*.
_____

PER CURIAM:

Petitioner Ashram Seepersad, a native and citizen of Trinidad and Tobago, seeks review of a decision of the Board of Immigration Appeals ("BIA") affirming the decision of Immigration Judge ("IJ") Gabriel C. Videla ordering him removed from the United States based on his conviction for a crime involving moral turpitude and constituting an aggravated felony. The agency denied Seepersad's applications for a waiver of inadmissibility under 8 U.S.C. § 1182(h),[1] withholding of removal, and relief under the Convention Against Torture. In a summary order also issued today, we deny the petition insofar as it challenges the denial of withholding of removal and relief under the Convention Against Torture. In this opinion, we address Seepersad's argument that the agency's interpretation of the waiver provision, § 1182(h), violates the Equal Protection Clause by arbitrarily distinguishing between aliens who seek a waiver of inadmissibility while within the United States from those entering the United States at its borders. We hold that it does not.

**Background**

Seepersad entered the United States on a visitor visa in 1995. In 2001, he adjusted to lawful permanent resident ("LPR") status based on his marriage to a U.S. citizen. In 2002, he was convicted of conspiracy to use stolen and fraudulently obtained credit cards, 15 U.S.C. § 1644(a), and was sentenced to probation and restitution. In 2015, Seepersad was placed in removal proceedings on the grounds that his conviction was a crime involving moral turpitude and was an aggravated felony, both as an attempt or conspiracy and as an offense involving fraud or deceit in which the loss to the victim exceeded $10,000. 8 U.S.C. §§ 1227(a)(2)(A)(i), (iii). To prevent his removal, Seepersad requested a waiver of inadmissibility under 8 U.S.C.

---

[1] Section 1182(h) of Title 8 of the United States Code is also referred to as § 212(h) of the Immigration and Nationality Act, particularly when referenced in the agency's decisions.

2

§ 1182(h). An agency regulation requires that an alien seeking a waiver under § 1182(h) while in the United States must also apply for adjustment to LPR status. 8 C.F.R. § 1245.1(f). Seepersad did not reapply for adjustment of status. As his counsel explained at oral argument, Seepersad had by then divorced his U.S. citizen wife and no longer had a qualifying relative who could obtain an immediate visa on his behalf. *See* 8 U.S.C. § 1255(a); 8 C.F.R. § 1245.1(a). The IJ denied the waiver for lack of an adjustment application, and the BIA affirmed. Seepersad timely petitioned for review.

Seepersad's argument is as follows. For decades, the BIA's decision in *Matter of Sanchez* allowed an IJ to grant a waiver of *inadmissibility*—without requiring a concurrent application for adjustment of status—to a *deportable* alien who, between the time of conviction and subsequent placement in removal proceedings, traveled abroad and then reentered the United States. 17 I. & N. Dec. 218 (B.I.A. 1980). The BIA thus blessed nunc pro tunc relief, embracing the fiction that an LPR in deportation proceedings was at the border seeking a waiver of inadmissibility. But this fiction was available only to a deportable alien who had traveled abroad after his or her conviction, re-entered the United States, and was subsequently placed into deportation proceedings, not to a deportable alien who was continuously present in the United States from the date of conviction to the date he or she was placed into removal proceedings. *See Yeung v. I.N.S.*, 76 F.3d 337, 339–40 (11th Cir. 1995). The Eleventh Circuit held that distinguishing between two classes of deportable aliens "identical in every respect but for the fact that members of one of the classifications departed and returned to this country at some point after they became deportable" violated equal protection. *Yeung*, 76 F.3d at 339. Citing *Yeung*—despite the fact that § 1182(h) nunc pro tunc relief is no longer available to anyone in removal proceedings—Seepersad argues that imposing upon him the requirement that he file a

3

concurrent adjustment of status application with his § 1182(h) waiver application, while not imposing such a requirement on someone who departed and seeks a waiver at the border, violates the Equal Protection Clause. Essentially, Seepersad asks us to extend the holding of *Yeung* to prohibit treating aliens seeking admission at the border and aliens in removal proceedings differently in the § 1182(h) context. We decline to do so.

The Government responds that *Matter of Sanchez* and *Yeung* are no longer good law: since those cases were decided, Congress has amended § 1182(h), the Attorney General has issued a reasonable regulation requiring an adjustment application for aliens in the United States, and the BIA has jettisoned the nunc pro tunc § 1182(h) waiver and with it, the equal protection problem the Eleventh Circuit identified in *Yeung*. *See Matter of Rivas*, 26 I. & N. Dec. 130, 133 (B.I.A. 2013). The Government identifies various rational bases for Congress to distinguish between a criminal LPR fighting removal from within the United States and a criminal LPR seeking admission at the border. In a nutshell, Congress might prefer that a criminal alien stay outside the United States while immigration officials decide whether to admit him; and if the criminal alien is within the United States, he should effectively identify himself and his status by affirmatively applying for adjustment of status. The Government contends that the BIA's application of § 1182(h) therefore does not violate equal protection. We agree.

### Discussion

We have jurisdiction to review Seepersad's constitutional challenge to the BIA's application of § 1182(h). *See* 8 U.S.C. § 1252(a)(2)(C), (D). That review is de novo. *Pierre v. Holder*, 588 F.3d 767, 772 (2d Cir. 2009).

The question is whether the Equal Protection Clause prevents the BIA from distinguishing between a criminal alien present in the United States who seeks a § 1182(h)

4

waiver to avoid removal and one who seeks such a waiver at the border to gain admission into the United States. "Over no conceivable subject is the legislative power of Congress more complete than it is over the admission of aliens." *Kleindienst v. Mandel*, 408 U.S. 753, 766 (1972) (internal quotation marks omitted). We therefore subject the agency's approach to the "minimal scrutiny test," under which distinctions between different classes of persons "must be reasonable, not arbitrary, and must rest upon some ground of difference having a fair and substantial relation to the object of the legislation, so that all persons similarly circumstanced shall be treated alike." *Francis v. INS*, 532 F.2d 268, 272 (2d Cir. 1976) (internal quotation marks omitted). The Supreme Court has instructed that "rational-basis review in equal protection analysis is not a license for courts to judge the wisdom, fairness, or logic of legislative choices." *Heller v. Doe*, 509 U.S. 312, 319 (1993) (internal quotation marks omitted).

The Immigration and Naturalization Act "governs both the exclusion of aliens from admission to this country and the deportation of aliens previously admitted." *Judulang v. Holder*, 565 U.S. 42, 45 (2011). The Government uses "a unified procedure, known as a 'removal proceeding,'" to adjudicate aliens inadmissible or deportable. *Id.* But certain grounds of relief are available to inadmissible aliens but not deportable aliens. Section 1182(h) is one such ground. It allows the Attorney General to waive specified grounds of inadmissibility, including a conviction for a crime involving moral turpitude, if the alien is the spouse, parent, son, or daughter of a U.S. citizen or LPR; denying the alien's admission would "result in extreme hardship" to the citizen or LPR relative; and the Attorney General, "in his discretion" and pursuant to the terms prescribed by regulation, has consented to the alien "applying or reapplying for a visa, for admission to the United States, or adjustment of status." 8 U.S.C. § 1182(h)(1)(B), (2). The Attorney General has issued a regulation making an application for adjustment of status

"the sole method of requesting the exercise of discretion" under § 1182(h) as it "relate[s] to the inadmissibility of an alien in the United States." 8 C.F.R. § 1245.1(f). Consequently, an alien "in the country in removal proceedings . . . must file a concurrent adjustment application in order to seek a waiver of the grounds of removal." *Matter of Rivas*, 26 I. & N. Dec. at 132. This is not just a matter of paperwork: by applying for adjustment of status, the alien is "assimilated to the position of an applicant for admission." *Poveda v. U.S. Att'y Gen.*, 692 F.3d 1168, 1176 (11th Cir. 2012). Put another way, with an adjustment application, the criminal alien *in* the United States steps into the shoes of one at the border seeking admission *to* the United States.

But what about a criminal alien "who is seeking to return to the United States and already has lawful permanent resident status"—must he too "apply for adjustment of status in conjunction with his waiver request"? *In re Abosi*, 24 I. & N. Dec. 204, 205–06 (B.I.A. 2007). In *Abosi*, the BIA answered no. *Id.* Abosi entered the United States, became an LPR, was convicted of a controlled substance offense, and then traveled abroad. *Id.* at 204. When he sought readmission at the U.S. border, he was placed in removal proceedings and charged as inadmissible. *Id.* at 204–05. The BIA explained that its regulation, 8 C.F.R. § 1245.1(f), did not apply to Abosi because he was not "*in the United States.*" *Id.* Rather, for purposes of the immigration law, Abosi was *outside* the United States seeking admission. For him, a waiver under § 1182(h) "simply eliminates the basis for his inadmissibility and leaves his lawful permanent resident status intact. . . . Consequently, there is no reason to require [him] to reapply for adjustment of status in conjunction with a section 212(h) waiver." *Id.* at 206. And Abosi's LPR status would not be terminated "until a removal order against him becomes final." *Id.*

The BIA thus differentiates between two types of LPRs: one who is convicted of a crime and is then placed in removal proceedings as deportable, and one who is convicted of a crime,

6

travels abroad, and after seeking readmission is placed in removal proceedings as inadmissible. Several courts of appeals have held that differentiating between these two classes of LPRs— those who seek a waiver from within the United States and those who seek a waiver at the border—in the § 1182(h) waiver process does not violate equal protection. *See Rivas v. U.S. Atty. Gen.*, 765 F.3d 1324, 1329–30 (11th Cir. 2014) (distinguishing its decision in *Yeung* and finding no equal protection violation because "the availability of the waiver now turns on whether the alien seeks admission from outside the United States or an exemption from removal from within the United States"); *Poveda*, 692 F.3d at 1177–78 (providing five rational bases for distinguishing between those seeking waivers from within the United States and those seeking waivers at the border); *Cabral v. Holder*, 632 F.3d 886, 894 (5th Cir. 2011) (observing that "Congress may have had any number of reasons to make the distinction it did," including a "desire to provide an incentive for deportable aliens to leave the country . . . without their having to be ordered to leave at the government's expense" (internal quotation marks omitted)); *Klementanovsky v. Gonzales*, 501 F.3d 788, 792–93 (7th Cir. 2007) (finding several rational bases for differing treatment).

We now join our sister circuits and uphold the BIA's interpretation of § 1182(h). As the Seventh Circuit observed, the statute distinguishes between criminal aliens seeking admission and those resisting deportation—those in the former category are eligible for a stand-alone waiver, but those in the latter category are not. *Klementanovsky*, 501 F.3d at 792. The BIA's regulation draws that same line, which has several rational bases:

> Congress might have wanted to ensure that dangerous people, including those convicted of crimes of moral turpitude, remain outside the United States while their applications for discretionary relief are being considered. Congress might have wanted aliens seeking such waivers to do so from outside the United States in order to discourage them from attempting to "fly under the radar" of the immigration authorities in the event that the discretionary waiver is ultimately

7

denied. Congress might have rationalized that an alien who self-deports and returns through proper admission procedures provides immigration authorities a second bite at the apple to intercept and consider otherwise unlawful aliens. Congress might have rationalized that granting a waiver to those who self-deport and seek readmission at the borders provides an incentive for such aliens to voluntarily depart at their own expense.

*Id*. at 792–93. These reasons amply support the BIA's approach.

Seepersad's reliance on the Eleventh Circuit's decision in *Yeung* is misplaced. *Yeung* addressed the equal protection problem of a nunc pro tunc § 1182(h) waiver for a deportable alien who traveled abroad after being convicted of a deportable offense. *Yeung*, 76 F.3d at 339-41 (discussing *Matter of Sanchez*). The Eleventh Circuit found it problematic that, "[a]ccording to the Board, those who have so departed and returned are worthy of consideration by the Attorney General for exclusion waivers. Those whose fate has not led them to sojourn are due no such consideration." 76 F.3d at 341. But since *Yeung*, the BIA has changed course, finding that amendments to § 1182(h) have made nunc pro tunc relief--the relief at issue in *Yeung*--statutorily unavailable to those seeking a waiver during removal proceedings. *Matter of Rivas*, 26 I. & N. Dec. at 134–35. The nunc pro tunc waiver under *Matter of Sanchez* was based on a version of § 1182(h) that applied if "the Attorney General . . . consented to the alien's applying or reapplying for a visa and for admission to the United States." 8 U.S.C. § 1182(h) (1988). In 1990, Congress amended § 1182(h) to apply if "the Attorney General . . . consented to the alien's "applying or reapplying for a visa, for admission to the United States, *or adjustment of status*." 8 U.S.C. § 1182(h) (emphasis added); *see* Immigration Act of 1990, Pub. L. 101–649, November 29, 1990, 104 Stat 4978. The italicized language mirrors the agency regulation requiring that an alien seeking a waiver from inside the United States also apply for adjustment of status, 8 C.F.R. § 1245.1(f), and the agency's rejection of a nunc pro tunc waiver in *Matter of Rivas*. The Eleventh Circuit has acknowledged that *Matter of Rivas* has cured the equal protection problem

identified in *Yeung* because "the availability of the waiver now turns on whether the alien seeks admission from outside the United States or an exemption from removal from within the United States." *Rivas v. U.S. Att'y Gen.*, 765 F.3d 1324, 1330 (11th Cir. 2014).

## Conclusion

For the foregoing reasons, the petition for review, insofar as it challenges the denial of a § 1182(h) waiver, is DENIED.