17-4038-ag
*Ascencio-Contreras v. Rosen*

**UNITED STATES COURT OF APPEALS**
**FOR THE SECOND CIRCUIT**

**SUMMARY ORDER**

RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 12th day of January, two thousand twenty-one.

PRESENT:    ROBERT D. SACK,
            DENNY CHIN,
            RAYMOND J. LOHIER, JR.,
                  *Circuit Judges*.
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

WILLIAN ASCENCIO-CONTRERAS, AKA
WILLIAM A. ASCENIO, AKA WILLIAM
CONTRERAS, AKA WILLIAM A. ASCENCIO
CONTRERAS,
                  *Petitioner*,
            -v-                                              17-4038-ag

JEFFREY A. ROSEN, ACTING UNITED
STATES ATTORNEY GENERAL,
                  *Respondent*.[1]
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

---

[1]      Pursuant to Federal Rule of Appellate Procedure 43(c)(2), Acting Attorney General Jeffrey A. Rosen is substituted for former Attorney General William P. Barr.

FOR PETITIONER:               Bruno Joseph Bembi, Law Office of Bruno Joseph
                              Bembi, Hempstead, NY.

FOR RESPONDENT:               Jeffrey Bossert Clark, Acting Assistant Attorney
                              General, Civil Division; Claire L. Workman, Senior
                              Litigation Counsel, Office of Immigration Litigation;
                              Rachel L. Browning, Trial Attorney, Office of
                              Immigration Litigation, Civil Division, United States
                              Department of Justice, Washington, D.C.


**UPON DUE CONSIDERATION** of this petition for review of a decision of the Board of Immigration Appeals ("BIA"), it is hereby **ORDERED**, **ADJUDGED**, and **DECREED** that the petition for review is **DENIED**.

Petitioner Willian Ascencio-Contreras, a native and citizen of El Salvador, seeks review of a November 22, 2017, decision of the Board of Immigration Appeals ("BIA") affirming a March 8, 2017, decision of an Immigration Judge ("IJ"). The IJ ordered Ascencio-Contreras removed for a crime involving moral turpitude ("CIMT") and denied both a waiver of inadmissibility under 8 U.S.C. § 1182(h) and his application for asylum, withholding of removal, and relief under the Convention Against Torture ("CAT"). *In re Willian Ascencio-Contreras*, No. A 058 893 353 (B.I.A. Nov. 22, 2017), *aff'g* No. A 058 893 353 (Immig. Ct. N.Y. City Mar. 8, 2017). We assume the parties' familiarity with the underlying facts, the procedural history of the case, and the issues on appeal.

Under these circumstances, we review the IJ's decision as modified by the BIA. *See Xue Hong Yang v. U.S. Dep't of Justice*, 426 F.3d 520, 522 (2d Cir. 2005). Because

the BIA did not affirm the IJ's denial of the § 1182(h) waiver based on extreme hardship or discretion, we do not reach those findings because they are no longer part of the decision under review. *See id*.; *see also Yan Chen v. Gonzales*, 417 F.3d 268, 271 (2d Cir. 2005).

## I. Removability for a CIMT

"Because the BIA has expertise applying and construing immigration law, we afford *Chevron* deference to its construction of undefined statutory terms such as 'moral turpitude.'" *Gill v. INS*, 420 F.3d 82, 89 (2d Cir. 2005) (internal citations omitted). "However, . . . the BIA has no expertise in construing federal and state criminal statutes, and so we review *de novo* the BIA's finding that a petitioner's crime of conviction contains those elements which have been properly found to constitute a CIMT." *Id*. (emphasis omitted).

A CIMT is an offense that is "inherently base, vile, or depraved." *Id.* (internal quotation marks omitted). "To involve moral turpitude, a crime requires two essential elements: reprehensible conduct and a culpable mental state." *Matter of Silva-Trevino*, 26 I. & N. Dec. 826, 834 (B.I.A. 2016). Traditionally, the BIA has defined a CIMT as "conduct that shocks the public conscience as being inherently base, vile, or depraved, and contrary to the accepted rules of morality and the duties owed between persons or to society in general." *Rodriguez v. Gonzales*, 451 F.3d 60, 63 (2d Cir. 2006) (internal quotation marks omitted). The BIA has held that, in general, burglary

3

offenses "may or may not involve moral turpitude, the determinative factor being whether the crime intended to be committed at the time of entry or prior to the breaking out involves moral turpitude."  *Matter of M-*, 2 I. & N. Dec. 721, 723 (B.I.A. 1946).

The BIA employs a "categorical approach" to determine if a state conviction meets the definition of moral turpitude and focuses on "the intrinsic nature of the offense rather than on the factual circumstances surrounding any particular violation."  *Gill*, 420 F.3d at 89 (internal quotation marks omitted); *see also Matter of Silva-Trevino*, 26 I. & N. Dec. at 832.  The BIA thus looks to the elements of the statute of conviction to determine whether a given crime is a CIMT.  *See Matter of Silva-Trevino*, 26 I. & N. Dec. at 831 (providing that the agency "will examine the State or Federal statute defining the crime of conviction to see if it fits within the generic definition of a crime involving moral turpitude").  We "presume that the conviction rested upon nothing more than the least of the acts criminalized, and then determine whether even those acts" demonstrate moral turpitude.  *Moncrieffe v. Holder*, 569 U.S. 184, 190-91 (2013) (internal quotation marks and brackets omitted).

New York law provides that "[a] person is guilty of burglary in the second degree when he knowingly enters or remains unlawfully in a building with intent to commit a crime therein, and when . . . [t]he building is a dwelling."  NY Penal Law § 140.25.  "Dwelling" is defined as "a building which is usually occupied by a person lodging therein at night."  *Id.* § 140.00(3).  "Generally, if a building contains a dwelling, a

4

burglary committed in any part of that building is the burglary of a dwelling; but an exception exists where the building is large and the crime is committed in a place so remote and inaccessible from the living quarters that the special dangers inherent in the burglary of a dwelling do not exist." *People v. McCray*, 23 N.Y.3d 621, 624 (2014). To ascertain whether a building is a "dwelling" under NYPL § 140.25(2), courts consider "(1) whether the nature of the structure was such that it was adapted for occupancy at the time of the wrongful entry; (2) the intent of the owner to return; and, (3) whether, on the date of the entry, a person could have occupied the structure overnight." *People* v. *DeFreitas*, 116 A.D.3d 1078, 1083 (N.Y. App. Div. 3d. Dep't 2014) (citing cases).

Ascencio-Contreras argues that "dwelling" in NYPL § 140.25(2) is overbroad and therefore second-degree burglary cannot qualify as a CIMT. We disagree. The "dwelling" exception is not as broad as Ascencio-Contreras claims because New York courts require a "close contiguity" between the portion of the building where the individual entered and the residential part of the building. *People v. Joseph*, 28 N.Y.3d 1003, 1007 (2016). In *Joseph*, the defendant entered the basement of a deli. *See id.* at 1004. The deli was located on the ground floor of a seven-story building, with six floors of residential apartments above it; however, the court held that because there was no access from the basement to any residential part of the building, the defendant did not come close enough to the residences as would have been required for a second-degree burglary conviction. *See id.* at 1006; *see also People v. Quattlebaum*, 91

5

N.Y.2d 744, 748-49 (1998) (building used for overnight stays only a few dozen times a year was not a "dwelling" for purposes of second-degree burglary).

Accordingly, because New York law requires this "close contiguity," the BIA did not err in reasoning that Ascencio-Contreras's conviction under NYPL § 140.25(2) qualifies as a CIMT. Ascencio-Contreras does not otherwise challenge the designation of his NYPL § 140.25(2) conviction as a CIMT.[2]

## II.     Waiver Under 8 U.S.C. § 1182(h)

The agency did not err in determining that Ascencio-Contreras was not eligible for a stand-alone § 1182(h) waiver of inadmissibility. Section 1182(h) waives certain criminal grounds of inadmissibility for undocumented individuals who are applying for admission or adjustment of status and whose removal will cause hardship to a qualifying relative. *See* 8 U.S.C. §§ 1182(h)(1)(B), (2).

Accordingly, to apply for the waiver, Ascencio-Contreras had to file an application to adjust status. *See* 8 U.S.C. § 1182(h)(2); *Matter of Rivas*, 26 I. & N. Dec. 130, 132-33 (B.I.A. 2013). To do so, he needed an approved visa petition and an immediately

---

[2]     We note that NYPL § 140.25(2) does not require that a defendant *know* that a building is a dwelling. The lack of such a scienter requirement raises the question of whether NYPL § 140.25(2) lacks the key element of moral turpitude traditionally required for a finding that a conviction constitutes a CIMT. *See Gill*, 420 F.3d at 89 ("It is in the intent that moral turpitude inheres . . . . Crimes committed knowingly or intentionally generally have been found, on the categorical approach, to be CIMTs.") (internal quotation marks and alteration omitted). As Ascencio-Contreras does not make the argument, we do not reach it.

6

available visa.  *See* 8 U.S.C. § 1255(a); 8 C.F.R. § 245.1(c)(4).  The agency did not err in determining that Ascencio-Contreras could not reuse the previously approved visa petition by which he obtained legal permanent resident ("LPR") status in 2006.  Pursuant to 8 C.F.R. § 204.2(h)(2):

> When a visa petition has been approved, and subsequently a new petition by the same petitioner is approved for the same preference classification on behalf of the same beneficiary, the latter approval shall be regarded as a reaffirmation or reinstatement of the validity of the original petition, except when . . . an immigrant visa has been issued to the beneficiary as a result of the petition approval.

The BIA has interpreted this language to mean that a person cannot reuse a visa petition to apply for adjustment of status.  *See In re Villarreal-Zuniga*, 23 I. & N. Dec. 886, 888-90 (B.I.A. 2006).  The BIA reasoned that the language of § 204.2(h)(2) would be superfluous if visa petitions could be reused, "because subsequent visa petitions would never be required if an original petition was automatically reinstated upon the filing of a new application for adjustment of status."  *Id.* at 889.

Because the regulations do not explicitly spell out whether a visa petition can be reused, we defer to the BIA's interpretation of the regulation.  *See Linares Huarcaya v. Mukasey*, 550 F.3d 224, 229 (2d Cir. 2008) (noting that deference to BIA's interpretation of regulations "is warranted only when the language of the regulation is ambiguous" (internal quotation marks and citation omitted)).  "[W]e give substantial deference to BIA decisions interpreting immigration regulations, unless an interpretation is plainly erroneous or inconsistent with the regulation."  *Bah v. Mukasey*,

7

529 F.3d 99, 110-11 (2d Cir. 2008) (internal quotation marks and citations omitted). The agency's interpretation of § 204.2(h)(2) here is not plainly erroneous. *See Corley v. United States*, 556 U.S. 303, 314 (2009) ("[A] statute should be construed so that effect is given to all its provisions, so that no part will be inoperative or superfluous . . . ." (alterations omitted)).

The agency also held that Ascencio-Contreras is ineligible for a stand-alone waiver because he was not applying for admission, *i.e.*, he had been admitted to the United States as a legal permanent resident in 2006 and was ordered removed under a deportability provision, 8 U.S.C. § 1227(a)(2)(A)(i). Ascencio-Contreras argues that this distinction between arriving aliens and those who are already in the country and found removable is arbitrary and violates equal protection. His argument is foreclosed by *Seepersad v. Sessions*, where we held that there is a rational basis for distinguishing "between criminal aliens seeking admission and those resisting deportation -- those in the former category are eligible for a stand-alone waiver, but those in the latter category are not." 892 F.3d 121, 125 (2d Cir. 2018).

## III.  *Particularly Serious Crime*

Particularly serious crimes bar asylum and withholding of removal. *See* 8 U.S.C. §§ 1158(b)(2)(A)(ii), 1231(b)(3)(B)(ii). If, as here, a crime is not per se particularly serious, then the agency "examine[s] the nature of the conviction, the type of sentence imposed, and the circumstances and underlying facts of the conviction" to determine if

8

it is particularly serious. *In re N-A-M-*, 24 I. & N. Dec. 336, 337-38, 342 (B.I.A. 2007); *see also Nethagani v. Mukasey*, 532 F.3d 150, 154-55 (2d Cir. 2008) (discussing the factors to be considered). "[O]nce the elements of the offense are examined and found to potentially bring the offense within the ambit of a particularly serious crime, all reliable information may be considered in making a particularly serious crime determination, including but not limited to the record of conviction and sentencing information." *In re N-A-M-*, 24 I. & N. Dec. at 337-38.

The agency reasonably determined that the elements of the offense -- knowingly entering or remaining in a building with intent to commit a crime and the building is a dwelling -- potentially brought the crime within the ambit of a particularly serious crime, *see id.*, because the offense involves "an intrusion of the privacy and security of ordinary people" and could "easily lead to a violent confrontation." App'x at 16.

Because the elements of the offense potentially brought it within the ambit of a particularly serious crime, Ascencio-Contreras had the burden to show that the particularly serious crime bar did not apply. *See* 8 C.F.R. § 1240.8(d) ("If the evidence indicates that one or more of the grounds for mandatory denial of the application for relief may apply, the alien shall have the burden of proving by a preponderance of the evidence that such grounds do not apply."); *see also* 8 U.S.C. § 1229a(c)(4)(A)(i) ("An alien applying for relief or protection from removal has the burden of proof to establish

9

that the alien . . . satisfies the applicable eligibility requirements[.]").  Ascencio-Contreras did not testify regarding his conviction and did not present documentation from his criminal case regarding the circumstances and underlying facts of the conviction.

Ascencio-Contreras argues that the IJ erred in requiring him to testify and in making an adverse inference based on his silence.  The cases on which he relies, however, explain that the IJ is limited to the categorical approach in determining whether a certain conviction constitutes an aggravated felony under the Immigration and Nationality Act or a predicate violent felony offense under the Armed Career Criminal Act, not a "particularly serious crime."  As explained above, the determination of whether a conviction constitutes a "particularly serious crime" is discretionary and as it is a part of the agency's analysis, the agency is permitted to consider the circumstances and underlying facts of the conviction.  Here, in the absence of any evidence to the contrary, the agency reasonably determined that Ascencio-Contreras failed to meet his burden in showing that the particularly serious crime bar does not apply.

\* \* \*

We have considered Ascencio-Contreras's remaining arguments and conclude they are without merit.  For the foregoing reasons, the petition for review is **DENIED.**  All pending motions and applications are **DENIED** and stays **VACATED**.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk